UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| IN RE THE APPLICATION OF REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS TO UNSEAL CRIMINAL PROSECUTION OF JULIAN ASSANGE | Misc. Action No. _____ |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THE APPLICATION OF
THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS
TO UNSEAL CRIMINAL PROSECUTION OF JULIAN ASSANGE

Caitlin Vogus
VA Bar No. 81054
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
cvogus@rcfp.org
*Counsel of Record for Applicant the Reporters Committee for Freedom of the Press*

Katie Townsend*
Gabriel Rottman*
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
*\*Pro Hac Vice Applications Pending*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................. i

PRELIMINARY STATEMENT ....................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................................. 2

ARGUMENT ........................................................................................................................................ 4

    I.    Criminal cases are presumptively open to the public under the First Amendment and common law. ........................................................................................................................ 4

        A.    Openness is a bedrock feature of the American criminal justice system. ....................... 4

        B.    The First Amendment and common law guarantee the public a presumptive right to access judicial documents in criminal cases. ............................................................... 5

    II.    The public's constitutional and common law rights of access apply to court records from the Assange Prosecution. .................................................................................................... 6

    III.    The Government cannot meet its burden to overcome the public's presumptive rights of access to the Assange Prosecution. ....................................................................................... 9

        A.    There can be no countervailing or compelling interest justifying the continued total sealing of the Assange Prosecution. ................................................................................ 9

        B.    Even if the government could identify a compelling interest that justified sealing some portion of the court records at issue, redaction—not wholesale sealing—is required.. 11

CONCLUSION ................................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Ayala v. Speckard*, 131 F.3d 62 (2d Cir. 1997) (*en banc*) ............................................................ 1

*Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989) ......................................................... 6, 11

*CBS, Inc. v. United States Dist. Court*, 765 F.2d 823 (9th Cir. 1985) ........................................ 10

*Co. Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014) ...................................................... 1, 4, 5, 6

*Democratic National Comm. v. Russian Fed'n*, No. 1:18-cv-03501 (S.D.N.Y.) .......................... 2

*Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004) ............................................... 10, 11

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004) .................................................. 6

*In re Herald Co.*, 734 F.2d 93 (2d Cir. 1984) ......................................................................... 8, 10

*In re Knight Publ'g. Co.*, 743 F.2d 231 (4th Cir. 1984) .......................................................... 9, 11

*In re State–Record Co.*, 917 F.2d 124 (4th Cir. 1990) (per curiam) ............................................. 6

*In re Wash. Post Co.*, 807 F.2d 383 (4th Cir. 1986) ..................................................................... 9

*Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572 (E.D. Va. 2009) ........ 9

*Littlejohn v. Bic Corp.*, 851 F.2d 673 (3d Cir. 1988) .................................................................... 4

*Matter of Application and Affidavit for a Search Warrant*, 923 F.2d 324 (4th Cir. 1991) ........... 8

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) ............................................................. 11

*Post v. United States*, 161 U.S. 583 (1893) .................................................................................. 7

*Press–Enter. Co. v. Superior Court*, 464 U.S. 501 (1984) .............................................. 1, 4, 9, 11

*Press–Enter. Co. v. Superior Court*, 478 U.S. 1 (1986) ..................................................... 6, 7, 8, 9

*Renigar v. United States*, 172 F. 646 (4th Cir. 1909) ................................................................... 8

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) .................................................. 4, 5

*Rushford v. New Yorker Magazine*, 846 F.2d 249 (4th Cir. 1988) ............................................... 9

*Sheppard v. Maxwell*, 384 U.S. 333 (1966) .................................................................................. 5

*Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178 (4th Cir. 1988) ........................................ 10

*Tri-Cty. Wholesale Distributors, Inc. v. Wine Grp., Inc.*, 565 F. App'x 477 (6th Cir. 2012) ......... 6

*U.S. ex rel. Doe v. X Corp.*, 862 F. Supp. 1502 (E.D. Va. 1994) .................................................. 5

*United States v. Anderson*, 799 F.2 1438 (11th Cir. 1986) ........................................................... 7

*United States v. Giordano*, 158 F. Supp. 2d 242 (D. Conn. 2001) ............................................... 8

*United States v. Graham*, 257 F.3d 143 (2d Cir. 2001) ................................................................ 8

*United States v. Netyksho*, No. 1:18-cr-00215-ABJ (D.D.C.) ...................................................... 2

*United States v. Progressive, Inc.*, 467 F. Supp. 990, *reh'g denied*, 486 F. Supp. 5 (W.D. Wis.), *appeal dismissed* 610 F.2d 819 (7th Cir. 1979) ........................................................................... 10

*United States v. Seitu Sulayman Kokayi*, No. 1:18-mj-406 (E.D. Va.) ..................................... 3, 10

*United States v. Smith*, 776 F.2d 1104 (3d Cir. 1985) ................................................................. 7, 8

*Virginia Dep't of State Police v. Wash. Post*, 386 F.3d 567 (4th Cir. 2004) ................................... 9

*Wash. Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991) ............................................................... 10

**Other Authorities**

@SeamusHughes, Twitter (Nov. 15, 2018, 4:48 PM), https://perma.cc/Q2UJ-RE3B ................... 3

Aruna Viswanatha & Ryan Dube, *U.S. Is Optimistic It Will Prosecute Assange*, Wall Street J., Nov. 16, 2018, https://perma.cc/WTD2-YKRA .......................................................................... 2

Charlie Savage, et al., *Julian Assange is Secretly Charged in U.S., Prosecutors Mistakenly Reveal*, N.Y. Times, Nov. 16, 2018, https://perma.cc/K32Q-UWJW ........................................ 3

Matt Zapotosky & Devlin Barrett, *Julian Assange Has Been Charged, Prosecutors Reveal Inadvertently in Court Filings*, Wash. Post, Nov. 15, 2018, https://perma.cc/9VV2-7LBE .. 2, 3

WikiLeaks.org, https://wikileaks.org/What-is-WikiLeaks.html ...................................................... 2

**Rules**

Fed. R. Crim. P. 6 ............................................................................................................................ 8

L. Crim. R. 49 ................................................................................................................................. 7

**PRELIMINARY STATEMENT**

The Reporters Committee for Freedom of the Press ("Reporters Committee") seeks access to sealed court records—including the docket and any criminal complaint, indictment, or other charging document—from the United States government's pending criminal prosecution of WikiLeaks founder Julian Assange ("Assange") (hereinafter, the "Assange Prosecution").

While the existence of a pending criminal case against Assange is public knowledge, and has been the subject of extensive media coverage, all court documents from that criminal case, including the docket, are currently under seal. Such extreme secrecy is anathema to our open system of justice. Both the First Amendment and common law give rise to a strong presumptive right of public access to the Assange Prosecution. *Co. Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014) ("*Public Citizen*"). Accordingly, judicial documents from it may be sealed and remain under seal only if countervailing factors so demand. *Id.* at 265–66. Indeed, because the constitutional right of access applies, the Assange Prosecution may remain under seal only if—and only to the extent that—shielding it from public view "is essential to preserve higher values." *Press–Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984) ("*Press–Enterprise I*").

The more extensive the closure of court proceedings or sealing of judicial documents, "the greater must be the gravity of the required interest and the likelihood of risk to that interest" needed to justify it. *Ayala v. Speckard*, 131 F.3d 62, 70 (2d Cir. 1997) (*en banc*). Given that it is public knowledge that Assange has been criminally charged, and in light of the public's powerful interest in access to court records in his case, there can be no overriding interest that overcomes the public's presumptive rights of access—let alone an interest so compelling that it demands continued complete and total sealing. No interest is served by continuing to allow the government to keep its prosecution of Assange entirely behind closed doors.

**FACTUAL BACKGROUND**

Assange is an Australian computer programmer and the founder of WikiLeaks, which describes itself as a "multi-national media organization and associated library." WikiLeaks.org, https://wikileaks.org/What-is-WikiLeaks.html. Since 2012, Assange has lived in the Ecuadoran Embassy in London.

In July 2018, Special Counsel Robert Mueller's office indicted 12 Russian military intelligence officers and charged them in connection with an alleged conspiracy to hack computer systems at the Democratic National Committee ("DNC") to secure proprietary communications and data for release during the 2018 U.S. presidential campaign. Indictment, *United States v. Netyksho*, No. 1:18-cr-00215-ABJ (D.D.C. filed July 13, 2018). "Organization 1"—which, it has been widely reported, is WikiLeaks—is referred to in the indictment as a conduit through which hacked communications were published. *Id*. ¶¶ 47–49; *see also, e.g.*, Matt Zapotosky & Devlin Barrett, *Julian Assange Has Been Charged, Prosecutors Reveal Inadvertently in Court Filings*, Wash. Post, Nov. 15, 2018, https://perma.cc/9VV2-7LBE.

In addition, in April 2018, both Assange and WikiLeaks were named as defendants in a civil lawsuit by the DNC against Russia, Russian military intelligence, the Trump campaign, and numerous individual defendants, arising out of the same alleged conspiracy. Complaint and Jury Demand, *Democratic National Comm. v. Russian Fed'n*, No. 1:18-cv-03501 (S.D.N.Y. filed Apr. 20, 2018).

On November 15 and 16, 2018, news media outlets, including *The Wall Street Journal*, *The New York Times*, and *The Washington Post* reported that the Justice Department had filed criminal charges against Assange. *See* Aruna Viswanatha & Ryan Dube, *U.S. Is Optimistic It Will Prosecute Assange*, Wall Street J., Nov. 16, 2018, https://perma.cc/WTD2-YKRA; Charlie

Savage, et al., *Julian Assange is Secretly Charged in U.S., Prosecutors Mistakenly Reveal*, N.Y. Times, Nov. 16, 2018, https://perma.cc/K32Q-UWJW; Zapotosky & Barrett, *supra*. According to *The New York Times'* reporting, the prosecution was approved during the summer of 2018 by senior Justice Department officials. Savage et al., *supra*.

On November 15, 2018, Seamus Hughes, the deputy director of the Program on Extremism at George Washington University, reported that the U.S. Attorney's Office for the Eastern District of Virginia had pasted sections of a motion to seal the charging document in the Assange Prosecution into a publicly available sealing motion filed in an unrelated matter. *See* @SeamusHughes, Twitter (Nov. 15, 2018, 4:48 PM), https://perma.cc/Q2UJ-RE3B. *The Washington Post* reported that the assistant U.S. attorney on that unrelated case, Kellen S. Dwyer, is also assigned to the Assange Prosecution. *See* Zapotosky & Barrett, *supra*.

The government unsealed the motion disclosing the Assange Prosecution in the unrelated matter in September 2018, and the defendant in that case was indicted last week. *Id.* The portions of that motion disclosing the Assange Prosecution are found in paragraphs three and five. *See* Government's Motion to Seal Criminal Complaint and Supporting Documents Pursuant to Local Rule 49(b), ¶ 3, *United States v. Seitu Sulayman Kokayi*, No. 1:18-mj-406 (E.D. Va. filed Aug. 22, 2018). Paragraph three of the motion states, specifically, that the United States has considered alternatives to sealing, and that any procedure "short of sealing will not adequately protect the needs of law enforcement at this time because, due to the sophistication of the defendant and the publicity surrounding the case, *no other procedure is likely to keep confidential the fact that Assange has been charged.*" *Id.* ¶ 5 (emphasis added). Paragraph five of the motion states in pertinent part that the "complaint, supporting affidavit, and arrest warrant, as well as this motion and proposed order would need to remain sealed until *Assange is arrested*

3

*in connection with the charges in the criminal complaint* and can therefore no longer evade or avoid arrest and extradition in this matter." *Id*. ¶ 5 (emphasis added).

Notwithstanding public disclosure of the Assange Prosecution, all court records related to that criminal case are sealed.

## ARGUMENT

### I.  Criminal cases are presumptively open to the public under the First Amendment and common law.

#### A.  Openness is a bedrock feature of the American criminal justice system.

Openness is "an indispensable attribute" of our judicial system. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980). Based on an "unbroken, uncontradicted history, supported by reasons as valid today as in centuries past," the U.S. Supreme Court has recognized "that a presumption of openness inheres in the very nature" of criminal proceedings. *Id.* at 573.

Among other things, public access to criminal matters guards against unfairness and inequity in the application of laws, as "the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known." *Press-Enterprise I*, 464 U.S. at 508 (emphasis in original). Public access to court proceedings and records also "provide[s] the public with a more complete understanding of the judicial system, including a better perception of fairness." *Public Citizen*, 749 F.3d at 266 (quoting *Littlejohn v. Bic Corp.*, 851 F.2d 673, 682 (3d Cir. 1988)). As the U.S. Supreme Court has explained, "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers*, 448 U.S. at 572.

The U.S. Supreme Court has also recognized that the news media plays a vital role in facilitating public monitoring of the judicial system.

> A responsible press has always been regarded the handmaiden of effective judicial administration, especially in the criminal field. . . . The press does not simply publish information about trials but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism.

*Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966). Thus, "[w]hile media representatives enjoy the same right of access as the public," they often "function[] as surrogates for the public" by, for example, reviewing court documents and reporting on their contents to the public at large. *Richmond Newspapers*, 448 U.S. at 573.

In short, it is well-settled that the public and the press have a presumptive right of access to court documents that serves "not only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary." *See Public Citizen*, 749 F.3d at 266. And, while there is always a "firmly rooted common law right of the public to have access to records of judicial proceedings," there is "an even stronger justification for public access to judicial records where, as here, the proceedings consist of matters involving the operation of government." *U.S. ex rel. Doe v. X Corp.*, 862 F. Supp. 1502, 1510 (E.D. Va. 1994).

### B. The First Amendment and common law guarantee the public a presumptive right to access judicial documents in criminal cases.

"It is well settled that the public and the press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings" that "springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." *Public Citizen*, 749 F.3d at 265 (internal citations omitted). "The distinction between the rights of access afforded by the common law and the First Amendment is significant" in the Fourth Circuit. *Id*. (internal quotation omitted). The common law right "extends to all judicial documents and records, and the presumption can be rebutted only by

5

showing that countervailing interests heavily outweigh the public interests in access." *Id*. at 265–66 (internal quotations omitted). The First Amendment right, by contrast, applies "only to particular judicial records and documents"; when it applies, "access may be restricted only if closure is necessitated by a compelling government interest and the denial of access is narrowly tailored to serve that interest." *Id*. at 266 (internal quotations and citations omitted).

To determine whether the First Amendment right of access applies to a particular type of proceeding or document, the Fourth Circuit has instructed courts to consider both "experience and logic," *i.e.* (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press–Enter. Co. v. Superior Court*, 478 U.S. 1, 8, 9 (1986) ("*Press–Enterprise II*"); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989).

## II. The public's constitutional and common law rights of access apply to court records from the Assange Prosecution.

As stated above, it is well settled that the public and the press have a qualified First Amendment and common law right of access to judicial documents and records in criminal matters like the Assange Prosecution. *Public Citizen*, 749 F.3d at 265.

Both the common law and constitutional rights of access apply, specifically, to court dockets. Indeed, several federal circuit courts of appeals, including the Fourth Circuit, have recognized that the First Amendment right of access extends to court dockets. *See Public Citizen*, 749 F.3d at 268 (holding that there is a First Amendment right of access to dockets in civil proceedings); *In re State–Record Co.*, 917 F.2d 124, 129 (4th Cir. 1990) (per curiam) (reversing the sealing of criminal docket sheets as overbroad and incompatible with the First Amendment and stating, "we can not understand how the docket entry sheet could be

6

prejudicial"); *see also Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93–94 (2d Cir. 2004) (holding that docket sheets in civil and criminal proceedings "enjoy a presumption of openness and that the public and the media possess a qualified First Amendment right to inspect them"); *Tri-Cty. Wholesale Distributors, Inc. v. Wine Grp., Inc.*, 565 F. App'x 477, 490 (6th Cir. 2012) ("The First Amendment access right extends to court dockets, records, pleadings, and exhibits . . ."). In sum, it is well-established that the public and the press have not just a common law, but also a constitutional right of access to the docket in the Assange Prosecution.[1]

Similarly, both the First Amendment and common law presumptions of access apply to any criminal complaint, indictment, or other charging document filed against Assange. *See United States v. Smith*, 776 F.2d 1104, 1112 (3d Cir. 1985) ("*Smith*") (holding that indictments are subject to both the First Amendment and common law presumptions of access); *see also United States v. Anderson*, 799 F.2 1438, 1442 n.5 (11th Cir. 1986) (stating that an indictment is "entitled to the status of a public document").

Applying the experience and logic test of *Press–Enterprise II*, 478 U.S. at 8, to conclude that the First Amendment right of access attaches to indictments, specifically, the Third Circuit in *Smith* explained that "[i]t has long been the law that 'criminal proceedings cannot be said to be brought or instituted until a formal charge is openly made against the accused, either by

---

[1] A public docket is an essential precursor to the news media's and the public's ability to assert their rights of access to court proceedings and court documents. Without public access to docket sheets, the public and press are unable to, among other things, oppose closure and sealing. Local Criminal Rule 49, which governs the designation and handling of sealed documents in criminal matters, presupposes that even when an "entire case" is sought to be kept under seal, the "Clerk shall provide *public notice* by docketing the motion in a way that discloses its nature as a motion to seal" to allow "[o]ther parties and non-parties" to submit memoranda in support of or opposition to the motion." L. Crim. R. 49(D)–(G); *id.*, (G) (stating that a "motion to have an entire case kept under seal shall be subject to the requirements and procedures of sections (D) and (F).")

7

indictment presented or information filed in court.'" *Smith*, 776 F.2d at 1112 (quoting *Post v. United States*, 161 U.S. 583, 587 (1893)). Indeed, in 1909, after conducting "an investigation of the practice in every state, where the institution of the grand jury is preserved," and citing case law dating back to 1825, the Fourth Circuit concluded that "[n]othing is more clear than that the 'established mode of procedure' is for the grand jury to make its presentments *publicly in open court* all of the grand jurors being present and answering to their names." *Renigar v. United States*, 172 F. 646, 658 (4th Cir. 1909) (emphasis added).[2]

Consistent with historical experience, logic also dictates that the constitutional presumption of access attaches to criminal complaints, indictments, and other documents that "set forth the charge or charges to be tried." *Smith*, 776 F.2d at 1112. Such information is "essential to an understanding of the trial, essential to an evaluation of the performance of counsel and the court, and, most importantly, essential to an appraisal of the fairness of the criminal process to the accused." *Id.* Public access to such information unquestionably "plays a significant positive role" in the administration of justice. *Press–Enterprise II*, 478 U.S. at 8.

In addition, U.S. Supreme Court precedent likewise makes clear that the First Amendment affords the public a presumptive right of access to materials filed in support of criminal complaints and other charging documents. For example, persuasively applying precedent of the U.S. Supreme Court and Second Circuit, the U.S. District Court for the District of Connecticut concluded that there is "no question" that a First Amendment right of access applies to affidavits filed in support of criminal complaints. *United States v. Giordano*, 158 F.

---

[2] The requirement of Rule 6(f) of the Federal Rules of Criminal Procedure that an indictment be presented in open court "reflects [this] common law tradition." *Smith*, 776 F.2d at 1112.

8

Supp. 2d 242, 244 (D. Conn. 2001) (citing *Press-Enterprise II*, 478 U.S. at 13; *United States v. Graham*, 257 F.3d 143, 148 (2d Cir. 2001); *In re Herald Co.*, 734 F.2d 93, 98 (2d Cir. 1984)).

    III.    **The Government cannot meet its burden to overcome the public's presumptive rights of access to the Assange Prosecution.**

        A.    **There can be no countervailing or compelling interest justifying the continued total sealing of the Assange Prosecution.**

The common law presumption "in favor of access," *Matter of Application and Affidavit for a Search Warrant*, 923 F.2d 324, 329 (4th Cir. 1991), can be rebutted only upon a showing that countervailing interests "heavily outweigh" the public's interest in access. *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988). The party seeking to overcome this presumption bears the burden of showing "some significant interest" outweighing the presumption. *Virginia Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004). In evaluating a request for access to court records under the common law, courts must consider "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." *Id*. (quoting *In re Knight Publ'g. Co.*, 743 F.2d 231, 235 (4th Cir. 1984)).

The First Amendment right of access is "much stronger than the guarantee provided by the common law." *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.,* 611 F. Supp. 2d 572, 577 (E.D. Va. 2009); *see Rushford*, 846 F.2d at 253 (stating that the First Amendment analysis is "more rigorous"). A document to which the First Amendment right of access applies may remain under seal only if "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Press–*

9

*Enterprise II*, 478 U.S. at 13–14 (quoting *Press–Enterprise I*, 464 U.S. at 510). Put another way, the constitutional right of access is overcome only if "(1) closure serves a compelling interest; (2) there is a 'substantial probability' that, in the absence of closure, that compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect that compelling interest." *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986).

"Regardless of whether the right of access arises from the First Amendment or the common law, it 'may be abrogated only in unusual circumstances.'" *Virginia Dep't of State Police*, 386 F.3d at 576 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)). Here, given that the government's case against Assange is already a matter of public knowledge, the government cannot plausibly claim a legitimate—let alone compelling— interest in keeping the docket and all documents related to the Assange Prosecution under seal. Indeed, given that "the fact that Assange has been charged" has now been disclosed to the public, the government can no longer assert a need to keep the Assange Prosecution wholly sealed until "Assange is arrested" purportedly to prevent him from "evad[ing] or avoid[ing] arrest and extradition[.]" *See* Government's Motion to Seal Criminal Complaint and Supporting Documents Pursuant to Local Rule 49(b), ¶¶ 3, 5, *United States v. Seitu Sulayman Kokayi*, No. 1:18-mj-406 (E.D. Va. filed Aug. 22, 2018).

Courts "do not have the power" to make what has become public private again. *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004). Although the Second Circuit in *Gambale* was referring to information made public by the district court, this principle also applies when information that is supposed to remain confidential is publicly disclosed by other means. *Id.* at 144, n.11 (citing *United States v. Progressive, Inc.*, 467 F. Supp. 990, *reh'g denied*, 486 F. Supp. 5 (W.D. Wis.), *appeal dismissed* 610 F.2d 819 (7th Cir. 1979)); *see also*

*CBS, Inc. v. United States Dist. Court*, 765 F.2d 823, 825 (9th Cir. 1985) (holding that a cooperating witness's post-conviction motion to reduce his sentence and the government's response could not be filed under seal in part because "most of the information the government seeks to keep confidential concerns matters that might easily be surmised from what is already in the public record"); *Wash. Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) (holding that a plea agreement of a cooperating witness must be unsealed when the fact of the witness's cooperation "was already within the public knowledge"). In sum, once "[t]he genie is out of the bottle" the court has "not the means to put the genie back," *Gambale*, 377 F.3d at 144, and "public exposure" alone may "preclude a closure order." *In re Herald Co.*, 734 F.2d at 101; *see also In re Knight Publ'g Co.*, 743 F.2d at 235 (stating that factors to be weighed in determining whether the common law right of access had been overcome include "whether the public has already had access to the information contained in the records" (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–608 (1978))). Here, the fact of Assange's criminal prosecution is public knowledge as a result of the government's actions, and is the subject of intense media coverage. The "genie is out of the bottle," *Gambale*, 377 F.3d at 144, and court records related to the Assange Prosecution must be unsealed.

> B. **Even if the government could identify a compelling interest that justified sealing some portion of the court records at issue, redaction—not wholesale sealing—is required.**

Even when public access to court records in a criminal case may be denied because sealing is "'essential to preserve higher values,'" such sealing must be "'narrowly tailored to service that interest,'" and the court "must consider alternatives to sealing the documents." *Baltimore Sun Co.*, 886 F.2d at 66 (quoting *Press-Enterprise I*, 465 U.S. at 410). "This ordinarily involves disclosing some of the documents or giving access to a redacted version." *Id.*

11

Thus, even if the government could identify a compelling interest sufficient to overcome the public's presumptive First Amendment right of access as to certain sealed court records in the Assange Prosecution, limited sealing and redaction—not wholesale sealing of the entire criminal case—would be required. *Press-Enterprise I*, 464 U.S. at 510 (finding that closure of records must be narrowly tailored to serve the compelling government interest).

## CONCLUSION

The press and public have a presumptive right of access to court records—including the docket and criminal complaint, indictment, or any other charging document—from the Assange Prosecution under both the common law and the First Amendment. The Court should, for the foregoing reasons, grant this Application for an order unsealing those court records.

Dated: November 16, 2018

                                      Respectfully submitted,

                                      */s/ Caitlin Vogus*
                                        Caitlin Vogus
                                        VA Bar No. 81054
                                        THE REPORTERS COMMITTEE FOR
                                        FREEDOM OF THE PRESS
                                        1156 15th St. NW, Suite 1020
                                        Washington, DC 20005
                                        Phone: 202.795.9300
                                        Facsimile: 202.795.9310
                                        cvogus@rcfp.org
                                        *Counsel of Record for Applicant the Reporters Committee for Freedom of the Press*

                                        Katie Townsend*
                                        Gabriel Rottman*
                                        THE REPORTERS COMMITTEE FOR
                                        FREEDOM OF THE PRESS
                                        1156 15th St. NW, Suite 1020
                                        Washington, DC 20005
                                        Phone: 202.795.9300
                                        Facsimile: 202.795.9310
                                        *Pro Hac Vice Applications Pending*