IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| IN RE THE APPLICATION OF REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS TO UNSEAL CRIMINAL PROSECUTION OF JULIAN ASSANGE | 1:18-mc-37<br><br>Hon. Leonie M. Brinkema |

### Government's Opposition to Reporters Committee's Application

This matter arises out of an unintentional error by the government in a filing in the case *United States v. Seitu Sulayman Kokayi*, 1:18mj406, which led to speculation about whether charges have been filed against Julian Assange, and prompted the application that is currently before this Court. The government accepts full responsibility for that mistake. Even though that error may have triggered speculation by the Reporters Committee, the plaintiff's application lacks merit and should be denied in light of established law and precedent. While the government has admitted that the aforementioned court filing was made in error, it has not confirmed or denied whether charges against Julian Assange exist, which is what the plaintiff seeks to learn through its application. Neither the First Amendment nor the common law require that the government provide such a confirmation or denial.

In our system, if a person is publicly charged with a crime, the charges and relevant case-related filings are publicly available through the clerk's office. Generally, if the public court record/docket does not contain charges against a particular individual, there are two possibilities: 1) the person is not charged; or 2) the person is charged under seal. In either event, the government is not required to publicly acknowledge which of those two possibilities happens

1

to be the case with respect to any individual. Because that is precisely what the plaintiff's application seeks with respect to Julian Assange, it should be denied.

**Argument**

I. **The First Amendment Does Not Require the Government to Confirm or Deny the Existence of a Criminal Charge Before an Arrest.**

The First Amendment does not require the government to confirm or deny the existence of criminal charges in this case. "The test for determining whether a First Amendment right of access is available is: 1) 'whether the place and process have historically been open to the press and general public,' and 2) 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) (quoting *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 8–10 (1986) (*Press–Enterprise II*)). "Precedent makes clear that both the experience and logic prongs are required" for a First Amendment right of access to attach. *See In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 291 (4th Cir. 2013) ("*WikiLeaks Sealing Litig.*"); (citing *Goetz*, 886 F.2d at 64 (stating a conjunctive test)).

"In the first inquiry, the court asks whether the type of proceeding at issue has traditionally been conducted in an open fashion. In the second inquiry, the court asks whether public access to the proceeding would tend to operate as a curb on prosecutorial or judicial misconduct and would further the public's interest in understanding the criminal justice system." *In re Wash. Post Co.*, 807 F.2d 383, 389 (4th Cir. 1986). Consideration of the history and value of public access to a particular type of document must necessarily consider the stage at which public access is sought. *See Times Mirror Co. v. United States*, 873 F.2d 1210, 1218 (9th Cir. 1989) ("We find no history of openness ***at this stage in the warrant proceedings*** which might argue in favor of a constitutionally protected right of access.") (emphasis added).

Here, the First Amendment does not require the government to disclose publicly whether it has charged a person before an arrest. Any contrary rule would completely undermine the proper functioning of the criminal process at this stage: anyone could petition the Court to require the government to confirm whether the time was right to flee or evade arrest. Thus, the federal and local rules specifically reflect a longstanding, and contrary, historic tradition of protecting the secrecy of grand jury proceedings and permitting courts to seal judicial records before a defendant is under supervision of the Court. *See United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 425 (1983) (Rule 6(e) of the Federal Rules of Criminal Procedure "codifies the traditional rule of grand jury secrecy"); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 n.6 (1958) (one of the chief purposes of grand jury secrecy is "[t]o prevent the escape of those whose indictment may be contemplated"). *See also* Fed.R.Cr.P. 6(e)(4-6) (permitting courts to seal indictments until the defendant is in custody or has been released pending trial, to close hearings to prevent disclosure of a matter occurring before a grand jury, and to seal records, orders, and subpoenas relating to grand-jury proceedings to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury); E.D.Va. Local Criminal Rule 49(B) (permitting the court to seal search warrants, arrest warrants, complaints, affidavits, or indictments upon a proper showing by the government); *United States v. Southland Corp.*, 760 F.2d 1366, 1379-80 (2d Cir. 1985) (explaining that Federal Rule of Criminal Procedure 6(e)(4) reflects historical practice).

It stands to reason that if there is no historic right of access to pre-arrest proceedings and judicial records, there likewise exists no historic right to require the government to confirm whether any such proceeding has occurred and whether any such records exist. The Reporters Committee filing proves this exact point. It does not cite ***a single case*** in which the government

was ordered to confirm or deny the existence of charges in this context. Instead, every case cited by the Reporters Committee involves civil litigation or post-arrest criminal litigation.[1] This lack of precedent underscores the lack of any history or tradition of pre-arrest access. *See WikiLeaks Sealing Litig.*, 707 F.3d at 295 ("[W]e have never held, nor has any other federal court determined, that pre-indictment investigative matters . . . must be publicly docketed. . . . We refuse to venture into these uncharted waters."). Since there is no history or tradition of pre-arrest disclosure of the existence or nonexistence of charges, the Court should reject the Reporters Committee's First Amendment claim on this basis alone.

The Reporters Committee's request also fails the second prong of the test because it cannot show that "public access plays a significant positive role in the functioning of the particular process in question." *Press–Enterprise II*, 478 U.S. at 8. In this case, the Court could only define the "particular process in question" as "grand jury investigations at a stage where no arrests have been made." The Fourth Circuit, applying *Press–Enterprise II*, has repeatedly held that public access

---

[1] *See, e.g. United States v. Smith*, 776 F.2d 1104 (3d Cir. 1985) (denying press motion to unseal bill of particulars filed in trial of charged and arrested defendants because the bill of particulars identified unindicted co-conspirators); *United States v. Anderson*, 799 F.2d 1438 (11th Cir. 1986) (same); *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 570 (4th Cir. 2004) (affirming in part unsealing of documents produced in civil suit related to decades-old criminal investigation); *United States v. Graham*, 257 F.3d 143, 145 (2d Cir. 2001) (affirming order unsealing audio and video tapes presented at pretrial detention hearing); *Matter of Application & Affidavit for a Search Warrant*, 923 F.2d 324, 325 (4th Cir. 1991) (upholding order to unseal search warrant affidavit after the defendant's arrest); *Washington Post v. Robinson*, 935 F.2d 282, 292 (D.C. Cir. 1991) (reversing order to seal plea agreement); *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 179-80 (4th Cir. 1988) (remanding to reconsider "order sealing the entire record" in a civil case); *In re Knight Pub. Co.*, 743 F.2d 231, 232 (4th Cir. 1984) (holding that district court erred in closing courtroom in criminal case without considering alternatives); *Application of The Herald Co.*, 734 F.2d 93, 94 (2d Cir. 1984) (remanding for further consideration of whether the court could be closed during a hearing on a motion to suppress); *United States v. Giordano,* 158 F. Supp. 2d 242, 244 (D. Conn. 2001) (denying press motion to unseal complaint and affidavit even after the defendant had been arrested); *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572 (E.D. Va. 2009) (denying motion to seal documents that were admitted into evidence during a civil trial).

does not play a significant positive role in the functioning of ongoing investigations. *See WikiLeaks Sealing Litig.*, 707 F.3d at 292 ("[O]penness . . . does not play a significant role in the functioning of investigations."); *Goetz,* 886 F.2d at 64-65 ("[W]e hold that the press does not have a First Amendment right of access to an affidavit for a search warrant."). Similarly, here, forcing the government to reveal whether charges exists would not have a "significant positive role in the functioning" of an investigation at the pre-arrest stage.

The Reporters Committee, however, advocates that *Press–Enterprise II*'s second prong counsels in favor of access to charging documents because "[s]uch information 'is essential to an understanding of the trial, essential to an evaluation of the performance of counsel and the court, and, most importantly, essential to an appraisal of the fairness of the criminal process to the accused.'" Reporters Committee Application ("App.") 8 (quoting *United States v. Smith*, 776 F.2d 1104, 1112 (3d Cir. 1985)). But it is undisputed that a First Amendment right of access attaches to indictments *after* an arrest has been made and adversarial litigation has begun. ***Before*** that time, however, it is too soon to "understand[] … the trial," "evaluat[e] … the performance of counsel and the court," or "apprais[e] … the fairness of the criminal process to the accused." *Id.*; *see also Times Mirror Co.*, 873 F.2d at 1217–18 ("We see no justification for opening warrant materials simply because those materials at some point may become the subject of a suppression hearing . . . . While warrant materials may, in due course, be disclosed to a defendant so she can challenge the constitutionality of the search at a suppression hearing to which the public has a First Amendment right of access, it does not follow that the public should necessarily have access to the information before that time"); *Matter of Search of 1993 Jeep Grand Cherokee*, No. 96-91M, 1996 WL 768293, at *9 (D. Del. Oct. 11, 1996), *report and recommendation adopted*, 958 F. Supp. 205 (D. Del.) ("Since no criminal complaint has been filed nor any indictment issued,

decisions have not been rendered that affect the rights of a *defendant*. Placing these documents in the public domain at this time will not assist in providing a meaningful evaluation of . . . the judicial process").

Put another way, because "the right of access to documents" is "a necessary corollary of the capacity to attend the relevant proceedings," *Doe v. Pub. Citizen*, 749 F.3d 246, 267 (4th Cir. 2014) (quotations omitted), there can be no right to confirm the existence of any charges prior to arrest where there is no accompanying right to attend any proceedings. If any defendant is charged, the propriety of pre-arrest sealing is appropriately litigated after an arrest has been made. *See United States v. Srulowitz*, 819 F.2d 37, 41 (2d Cir. 1987) ("[A] defendant's right to challenge the propriety of the sealing is fully protected by affording him the right to a hearing *after* the indictment is opened to public inspection") (emphasis in original).

Finally, the Reporters Committee's relies heavily on the truism that "[c]ourts 'do not have the power' to make what has become public private again.'" App. at 10 (quoting *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004)). But the government is not asking the Court to reseal a document, such as the *Kokayi* sealing order, that already has been made public. Rather, it is the Reporters Committee that attempts to obtain a confirmation or denial of speculation by seeking the disclosure of any "sealed court records — including the docket and any criminal complaint, indictment, or other charging document . . . ." App. 1. Presumably, the Reporters Committee made this request because it hopes to obtain information that is ***not*** currently public. The media report upon which the Reporters Committee relies underscores the fact that the information it is seeking — whether Assange has been charged, and if so, the nature of the charges — is not public. That media report quoted an attorney for Mr. Assange as stating that "***[o]bviously, I have no idea if he has actually been charged or for what.***" Matt Zapotosky & Devlin Barrett,

6

*Julian Assange Has Been Charged, Prosecutors Reveal Inadvertently in Court Filing*, Wash. Post (Nov. 15, 2018) (quoted in Application at 2-3) (emphasis added).

Moreover, the *Deutsche Bank* decision, upon which the Reporters Committee relies, cuts against its application. There, the district court had referenced the parties' "multi-million dollar settlement" in an unsealing order and the parties had disclosed the actual settlement figure at a sealed conference. *Deutsche Bank*, 377 F.3d at 137. While the Second Circuit noted that it had no ability to make confidential the unsealing order, which had already been widely disseminated, it nonetheless ordered that the transcript of the conference remain sealed "unless all confidential information," including the settlement amount, "is redacted." *Id.* at 144.

Similarly here, an erroneous prior filing and press reports do not justify requiring the government to disclose additional information. *See WikiLeaks Sealing Litig.*, 707 F.3d at 294 (holding that the government's "disclosure of the existence of its investigation" does not undermine its interest in confidentiality of "sensitive nonpublic facts, including the identity of targets and witnesses in an ongoing criminal investigation."); *El-Masri v. United States*, 479 F.3d 296, 311 n.5 (4th Cir. 2007) ("By no means do we endorse El-Masri's theory that publicly reported information concerning his alleged rendition is ineligible for protection under the state secrets doctrine simply because it has been published in the news media," but finding no need to address it squarely); *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983) ("[E]ven if a fact … is the subject of widespread media and public speculation, its official acknowledgment by an authoritative source might well be new information that could cause damage to the national security."); *Klayman v. CIA*, 170 F. Supp. 3d 114, 123–24 (D.D.C. 2016) (finding that press reports do not constitute official acknowledgements by an agency and do not preclude an agency from making a "*Glomar*" response to a Freedom of Information Act request, reasoning in part, that even

references to statements purportedly made by anonymous "current and former officials" do not suffice to show official acknowledgement) (citations omitted); *United States v. Smith*, 985 F. Supp. 2d 506, 533 (S.D.N.Y. 2013) ("[E]ven if there were press reports suggesting the identity of the cooperating witness, and even if those reports prove to be accurate, that is not the functional equivalent of officially acknowledging the cooperating witness, let alone the information that the witness has provided") (citing press report about an ongoing investigation that proved to be inaccurate); *cf. Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009) (noting that under the Freedom of Information Act, "the law will not infer official disclosure of information classified by the CIA from . . . widespread discussion of a classified matter").

## II.   At the Pre-Arrest Stage, A Neutral Court Considers the Right to Require the Confirmation or Denial of Charges *Ex Parte*.

"The common law presumes a right to access *all* judicial records and documents, but this presumption can be rebutted if the public's right of access is outweighed by competing interests." *WikiLeaks Sealing Litig.*, 707 F.3d at 290 (citations and quotations omitted).[2]  The Reporters Committee seeks a right of access to any "sealed court records—including the docket and any criminal complaint, indictment, or other charging document."  App. at 1, 7.  But this is simply another request for the government to confirm or deny the existence of a charge since a docket or records in the Assange prosecution would only exist if there were a charge.

The Fourth Circuit has previously rejected a similar request to gain access to a docket at a pre-arrest stage of an ongoing grand jury investigation.  S*ee WikiLeaks Sealing Litig.*, 707 F.3d at

---

[2] Similarly, if the Court disagrees and finds a First Amendment right of access, that right "is not absolute." *Press Enterprise II*, 478 U.S. at 9.  Rather, it simply creates a "presumption of openness" to the particular document or proceeding that may be overcome "by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co. v. Superior Court of California, Riverside Cty.*, 464 U.S. 501, 509–10 (1984) (*Press Enterprise I*) (quotations omitted).

295 ("[W]e have never held, nor has any other federal court determined, that pre-indictment investigative matters such as § 2703(d) orders, pen registers, and wiretaps, which are all akin to grand jury investigations, must be publicly docketed."); *In re Sealed Case*, 199 F.3d 522, 525 (D.C. Cir. 2000) (citing federal public docketing cases and noting that none has required such in the grand jury context).[3]

This makes sense because at the pre-arrest stage, under longstanding rules and practice, courts properly and routinely balance the government's interests against the public's right of access *ex parte*—not in public, as the Reporters Committee seeks here. Until the government has confirmed or denied the existence of charges, granting the Reporters Committee request would undermine the very reasons those rules exist: to prevent putative targets from prematurely learning about charges, averting arrest, and destroying evidence. As noted above, Federal Rule of Criminal Procedure 6(e)(4) provides that "[t]he magistrate judge to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial." Fed. R. Crim. P. 6(e)(4).

The Fourth Circuit has read Rule 6(e)(4) broadly to allow a "judicial officer [to] grant the Government's motion to seal [an indictment] for any legitimate prosecutorial need," including, but

---

[3] The clerk's office docketing procedures satisfy public notice requirements. If a complaint or indictment is filed under seal, the clerk's office assigns the matter an "MJ" or "CR" number, and publicly dockets the matter with the following notation: "This case is SEALED." The Reporters Committee contends that Local Criminal Rule 49 requires the clerk to give public notice of the fact that the government has moved to seal an entire case. App. 7 n.1. But any such requirement at the pre-arrest stage would defeat the purpose of moving to seal an indictment prior to arrest. *See also* Local Crim. R. 49(D) ("**Any post-arrest motion** for a protective order providing prospectively for filing of documents under seal shall be accompanied by a non-confidential supporting memorandum, a notice that identifies the motion as a sealing motion, and a proposed order.") (emphasis added); Local Crim. R. 49(G) ("A motion to have an entire case kept under seal shall be subject to the requirements and procedures of sections (D) and (F).").

not limited to, "the need to take the defendant into custody." *United States v. Ramey*, 791 F.2d 317, 321 (4th Cir. 1986). *See also United States v. Ellis*, 622 F.3d 784, 792–93 (7th Cir. 2010) ("Under Federal Rule of Criminal Procedure 6(e)(4), a district court's power to seal an indictment is broad; sealing an indictment is generally permitted when it is in the public interest or serves a legitimate law-enforcement purpose."); *United States v. DiSalvo*, 34 F.3d 1204, 1218 (3d Cir. 1994) ("An indictment may be sealed for any legitimate law enforcement reason or where the public interest requires it."); *United States v. Lakin*, 875 F.2d 168, 171 (8th Cir. 1989) ("[A] judicial officer may grant the government's request to seal an indictment for any legitimate prosecutorial objective or where the public interest otherwise requires it.").

Accordingly, under Rule 6(e)(4), as it has been judicially interpreted, and under its corollary, Local Rule 49(B), courts routinely balance the common law right of access against the government's countervailing interests in deciding whether to grant a motion to seal, which by necessity must be filed and decided *ex parte*. *See WikiLeaks Sealing Litig.*, 707 F.3d at 294 (to allow access after a magistrate's finding that the government's interests are significantly countervailing and outweigh the public's common law presumption of access would be "an improper means of circumventing the [Stored Communication Act's] clear assessment that in some instances, non-disclosure of the existence of the orders is warranted").

Put simply, at the pre-arrest stage, there can be no common law right to require the government to publicly confirm whether charges exist because by necessity Rule 6(e)(4) presupposes that any request and order to seal will remain non-public until a defendant is under the supervision of the Court. *See United States v. Texas*, 507 U.S. 529, 534 (1993) (Common law rights are abrogated where statutes or federal rules "'speak directly' to the question addressed by the common law.") (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978)).

10

"[W]hen Congress addresses a question previously governed by . . . federal common law the need for such an unusual exercise of lawmaking by federal courts disappears." *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 314 (1981). "Legislative displacement of federal common law does not require the same sort of evidence of a clear and manifest [congressional] purpose demanded for preemption of state law." *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 423–24 (2011) (internal quotations omitted).

The test for whether a statute or rule abrogates the common law "is simply whether the statute speaks directly to the question at issue." *Id.* (internal quotations omitted); *see also Goetz*, 886 F.2d at 65 (recognizing a "common law qualified right of access to … warrant papers" because "[u]nlike the rule of secrecy that is imposed" under Rule 6(e), "Rule 41(g) is silent about disclosure of search warrant materials"); *cf. Dietz v. Bouldin*, 136 S. Ct. 1885, 1892, (2016) ("[T]he exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute."); *Carlisle v. United States*, 517 U.S. 416, 426 (1996) (same).

In short, while the Reporters Committee Application seeks to challenge any decision to seal any charges here, because the government has not confirmed or denied any such charges, its Application is premature and should be denied.

## **Conclusion**

For the foregoing reasons, there is no First Amendment or common law right to require the government to confirm the existence of charges prior to an arrest. Therefore, the United States requests that the Court deny the Reporters Committee's Application to Unseal.

    Respectfully submitted,

    G. Zachary Terwilliger
    United States Attorney

By:    /s/
    Gordon D. Kromberg
    Assistant United States Attorney
    United States Attorney's Office
    Eastern District of Virginia
    2100 Jamieson Avenue
    Alexandria, Virginia 22314
    (703) 299-3700
    gordon.kromberg@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of November 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all attorneys of record.

                                            /s                            
                                          Gordon D. Kromberg
                                          Assistant United States Attorney
                                          Attorney for the United States of America
                                          United States Attorney's Building
                                          Justin W. Williams U.S. Attorney's Building
                                          2100 Jamieson Avenue
                                          Alexandria, Virginia  22314
                                          Phone:  703-299-3700
                                          Fax:  703-299-3981
                                          Email Address: gordon.kromberg@@usdoj.gov