1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
IN RE THE APPLICATION OF        .    Civil Misc. No. 1:18mc37
REPORTERS COMMITTEE FOR         .
FREEDOM OF THE PRESS TO UNSEAL  .    Alexandria, Virginia
CRIMINAL PROSECUTION OF         .    November 27, 2018
JULIAN ASSANGE.                 .    10:28 a.m.
                                .
. . . . . . . . . . .
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE MOVANT:                KATIELYNN TOWNSEND, ESQ.
                               CAITLIN V. VOGUS, ESQ.
                               Reporters Committee for Freedom
                               of the Press
                               1156 15th Street, N.W.
                               Suite 1250
                               Washington, D.C. 20005-1779


FOR THE UNITED STATES          GORDON D. KROMBERG, AUSA
    ATTORNEY FOR THE           TRACY McCORMICK, AUSA
    EASTERN DISTRICT OF        United States Attorney's Office
    VIRGINIA:                  2100 Jamieson Avenue
                               Alexandria, VA 22314


OFFICIAL COURT REPORTER:       ANNELIESE J. THOMSON, RDR, CRR
                               U.S. District Court, Third Floor
                               401 Courthouse Square
                               Alexandria, VA 22314
                               (703)299-8595



(Pages 1 - 18)



COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

```
 1                     P R O C E E D I N G S
 2            THE CLERK:  Civil Action 18mc37, In re:  Application
 3   of Reporters Committee for Freedom of the Press to Unseal
 4   Criminal Prosecution of Julian Assange.  Will counsel please
 5   note their appearances for the record.
 6            MS. VOGUS:  Good morning, Your Honor.  Caitlin Vogus
 7   for the Reporters Committee for Freedom of the Press.  My
 8   colleague, Katie Townsend, who's been admitted pro hac vice,
 9   will be arguing for the Reporters Committee this morning.
10            THE COURT:  Good morning.
11            MS. TOWNSEND:  Good morning, Your Honor.
12            MR. KROMBERG:  Good morning, Your Honor.  Gordon
13   Kromberg and Tracy McCormick for the United States.
14            THE COURT:  Good morning.
15            All right.  Well, this is an interesting case, to say
16   the least, and it begins with the pleading that the government
17   filed in a different case, the case against Mr. Kokayi, in
18   which the following statement does appear, and this is on page
19   2.  In paragraph 3, it says:  "Another procedure short of
20   sealing will not adequately protect the needs of law
21   enforcement at this time because due to the sophistication of
22   the defendant and the publicity surrounding the case, no other
23   procedure is likely to keep confidential the fact that Assange
24   has been charged," and I think it's those last few words, "the
25   fact that Assange has been charged," is what's got us here
```

1  today.

2             My understanding is that the government has stated
3  and it's obvious if one reads the entire document that some
4  kind of mistake has been made because this document was filed
5  in a completely unrelated case that happened to be randomly
6  assigned to this judge.  So the problem now is that the media
7  have requested based upon that statement that anything related
8  to the Assange case, to the extent that there are things that
9  have been filed in the court, be unsealed.

10             Is that a fair, quick description of your position?

11             MS. TOWNSEND:  Yes.

12             THE COURT:  All right.  And the government has come
13  back and said first of all that this was a mistake, that the
14  government is not prepared to admit or deny anything as to the
15  status of the Assange matter.  The government has admitted, as
16  I understand it, publicly that Assange is under investigation.

17             Is that right, Mr. Kromberg?

18             MR. KROMBERG:  I don't think that's correct, Judge.

19             THE COURT:  Or Assange and/or WikiLeaks?

20             MR. KROMBERG:  That WikiLeaks is under investigation.
21  I think it has never been said that Assange in particular is
22  under investigation, but we have definitely said that there is
23  an investigation into WikiLeaks and anyone who leaks secret
24  information -- I believe that what I'm aware of, there was a
25  question to the Attorney General Sessions last year:  Is

4

1   Assange under investigation, and the answer was:  We're going
2   after anyone who leaks, and if we catch anybody who leaks, yes,
3   we're going to go -- we're going to go and try and arrest them.
4          But to the extent -- that's the most that I know that
5   has been said about Mr. Assange in particular, as opposed to
6   WikiLeaks in general.
7          THE COURT:  All right.  But let us assume just for
8   the sake of argument, let us assume that there were charges of
9   some kind filed against Mr. Assange which are under seal.
10  Given the fact that this statement does appear in a government
11  document and given the fact that everybody knows where this man
12  is, what would the rationale be for maintaining seals on at
13  least the fact that the person might have been charged?
14         MR. KROMBERG:  Judge, before I say anything, I have
15  to reiterate what you just said, which is this is all an
16  assumption.
17         THE COURT:  Correct.
18         MR. KROMBERG:  Assuming that there is a charge, but
19  this is -- I am not assuming there is a charge.  We're just
20  theoretically --
21         THE COURT:  We're -- hypothetical.  I want to
22  understand.
23         MR. KROMBERG:  Theoretically.
24         THE COURT:  Yeah.
25         MR. KROMBERG:  The Fourth Circuit actually had a --

1  in the *Moussaoui* case, it wasn't the *Moussaoui* case involving
2  one of your decisions, but it was the Reporters Media had
3  challenged the sealing of one of the arguments at the Fourth
4  Circuit, and in that, in that *Moussaoui* decision, the Fourth
5  Circuit wrote -- and this is in 65 Fed.Appx. 881, 887 n. 5, and
6  this was a 2003 case -- and they said, "Intervenors also note
7  that much of the information contained in the pleadings has
8  been reported publicly and suggest that for this reason,
9  sealing is no longer required.  This court has previously
10 rejected such an argument, noting that '[i]t is one thing for a
11 reporter or author to speculate or guess that a thing may be so
12 or even, quoting undisclosed sources, to say that it is so; it
13 is quite another thing for one in a position to know of it
14 officially to say that it is so.'"
15         That's what's going on here.  The reporters are doing
16 their job, and they want to know.  They speculate that there's
17 a charge, but if there was a charge in any particular case,
18 there's either -- well, there's two -- as we wrote in the
19 pleading, there are two possibilities.  One is that an
20 individual has not been charged.  Second is that he has been
21 charged.
22         If he has been charged, under the rules, Rule
23 6(e)(4), promulgated by the Supreme Court, the magistrate
24 judge could have sealed that.  So either he was charged and it
25 was put under seal by a magistrate pursuant to a rule

1  implemented -- promulgated by the Supreme Court or he wasn't
2  charged.
3           Any discussion of why this was so or why it's a good
4  idea or a bad idea for sealing cannot be done in a forum in
5  public.  It would have to be done -- if it were so, it would
6  have to be done on an ex parte basis because whatever reasons
7  there are for keeping the case sealed, if such a case exists
8  and it is sealed, that could only be explained ex parte.
9           If this Court desires, we can provide something on an
10 ex parte basis that explains whether there is a case or not,
11 and if there is a case, why it's important that we take the
12 position that we do, and if there's not a case, we'll say that
13 it's important that we don't say there's not a case because
14 that would mean in any case where there was, was a case, we
15 couldn't say there was not a case, and that would be a signal
16 there was a case.
17          So we're in a position here, Judge, in a public forum
18 to confirm or deny.  If we confirm, that puts us -- that would
19 have us confirming facts that should only be done -- should
20 only be confirmed on an ex parte basis, and that denying, it
21 makes -- it puts the government in a worse position in every
22 other case because it's a signal that if you don't deny, that
23 means you're confirming.
24          So that's the problem here, Judge.  If the Court
25 needs more information, it's got to be done on an ex parte

1  basis.  It cannot be done -- it should not be done in, in an
2  open forum.
3           THE COURT:  All right.
4           MR. KROMBERG:  Thank you, Judge.
5           MS. TOWNSEND:  Thank you, Your Honor.  I think I
6  would start with your initial question in terms of the context
7  of this particular disclosure that was made by the government,
8  inadvertently or not, but in an official public filing.  Not
9  only did reporting after that disclosure confirm, in fact, from
10 government sources that there is, in fact, a criminal
11 prosecution pending against Mr. Assange, but that disclosure
12 came in the context of a number of prior government statements
13 indicating that both WikiLeaks and Mr. Assange at a minimum
14 are -- were the subject of law enforcement investigations.
15          In January of 2017, the Intelligence Committee
16 released its official report on Russian election interference,
17 which stated that WikiLeaks was used to release data obtained
18 in cyber operations publicly and in exclusives to media
19 outlets.  In April 13, then -- on April 13, 2017, then CIA
20 Director Mike Pompeo in a speech at the Center for Strategic
21 and International Studies called WikiLeaks a hostile
22 intelligence service.  He noted, and I quote:  "We have to
23 recognize that we can no longer allow Assange and his
24 colleagues the latitude to use free speech values against us.
25 To give them the space to crush us with misappropriated secrets

1  is a perversion of what our great Constitution stands for.  It
2  ends now."
3         The following month, on May 23, 2017, then FBI
4  Director James Comey testified to Congress that WikiLeaks was
5  a, quote, important focus of our attention.
6         In June of 2018, Vice President Mike Pence told
7  members of the media that he had constructive conversations
8  about Mr. Assange with Ecuadoran President Lenín Moreno, and
9  then the following month in July 2018, as we pointed out in our
10 application, Special Counsel Robert Mueller's office indicted
11 12 Russian military intelligence officers, charging them in
12 connection with an alleged conspiracy to hack DNC computer
13 systems, to release data related to -- during the 2018 U.S.
14 Presidential Campaign.  WikiLeaks, which is referred to as
15 Organization 1 in that indictment, is described as the conduit
16 through which hacked communications were published.
17        So I do think this disclosure comes in a broader
18 context of a number of official statements by government
19 officials and agencies, making it clear that at a minimum,
20 WikiLeaks and Mr. Assange himself were under investigation.
21 Really, the confirmation that we see through a public
22 disclosure in -- on -- in an unrelated case, again, whether
23 inadvertent or not, merely confirms, I think, what, what the
24 public had already, I think, at that point were speculating,
25 but I think this confirms speculation.

1          And I would note, Your Honor, that the government did
2  not really respond to your question as to what a compelling or
3  countervailing interest it would offer to keep this entire case
4  under seal.  So the fact of the prosecution, in addition to the
5  court docket, in addition to the motion to seal itself, in
6  addition to the charging document, which the public, as we
7  argue in our application, I can address this more, has First
8  Amendment and common law right of access to.
9          THE COURT:  Well, there's no question the public has
10 a right under normal circumstances to see charging documents,
11 but as the government points out in their papers, that right
12 does not actually fully accrue until the individual has been
13 arrested or until the case has been publicly --
14         MS. TOWNSEND:  I would -- if I may, Your Honor, I
15 would state that the -- and I apologize we did not have an
16 opportunity to submit a written response to the government's
17 opposition that was submitted yesterday, but I would actually
18 take issue with that characterization that's presented by the
19 government.  I think the government is attempting to refrain
20 the issue before the Court as whether or not the First
21 Amendment requires the government to confirm or deny the
22 existence of charges pre-arrest.
23         This pre-arrest notion does not appear in any of the
24 cases that are cited by the government.  In fact, the cases
25 cited by the government for a proposition that the First

10

1  Amendment and, I believe, the common law right of access do not
2  comply here, are either entirely inapposite or they support the
3  Reporters Committee's application.
4       So the government relies, for example, on the Third
5  Circuit's decision in *United States v. Smith* for the
6  proposition that a First Amendment right of access attaches to
7  indictments after an arrest has been made and adversarial
8  litigation has begun.  *Smith* held nothing of the sort, Your
9  Honor.  The word "arrest" doesn't even appear in that decision.
10 *Smith* stands for the proposition that a First Amendment right
11 of access attaches to charging documents.
12      THE COURT:  But charging documents, the question is
13 when.  The charging documents, after they have been executed,
14 because the concern that the government legitimately has -- and
15 again, these cases always involve a balancing of government
16 legitimate interests versus the rights of the public and the
17 press to have access.  That always happens.  It's a balancing
18 situation.
19      And in the area of criminal justice, where one of the
20 main concerns is if a person has been charged, making sure that
21 person is brought to justice, which means among other things
22 ensuring that they are arrested, minimizing risks to those who
23 have to make the arrest, making sure that evidence is not
24 tampered or destroyed, making sure that witnesses are not
25 intimidated.  Obviously, those are legitimate concerns which,

11

1   which push in the direction of allowing the government to
2   request sealing of charging documents until they've been
3   executed.
4         Once a person has been publicly charged and is now in
5   the control of the government, that is, the arrest has been
6   made, that reduces the risk to the people who have to make the
7   arrest, it reduces the risk of flight, and it often will reduce
8   the risk of evidence being tampered with, but that's why the
9   timing is, as the government points out in their papers,
10  extremely important.
11        MS. TOWNSEND:  If I may, Your Honor, I think the
12  timing may be relevant to whether or not there's a compelling
13  government interest here that overcomes the First Amendment
14  right of access.  I don't think the pre-arrest timing -- and
15  again, there's no support for this in the case law -- would
16  suggest that the First Amendment right of access does not apply
17  at all and, in fact, that there's no -- that indeed the
18  government doesn't bear the burden of demonstrating a
19  compelling, a compelling interest to overcome that right of
20  access.
21        THE COURT:  Why is it not sufficiently compelling to
22  simply say we haven't arrested the person yet?  Why would that
23  not in and of itself take care of the problem?  Because it's
24  correct, they haven't got the person arrested, and most people,
25  not all, but many people, if they thought they were under

1   charges, might try to abscond, might try to hide evidence.
2          Do you have any case law that indicates that the
3   First Amendment requires that the government provide public
4   access to charging documents before the person has been
5   arrested, before they've been arrested?
6          MS. TOWNSEND:  I would, I would actually point Your
7   Honor to the Third Circuit's statement in *Smith*, which
8   acknowledges -- actually, I think this is what you were getting
9   at -- while it finds that there's a First Amendment and common
10  law right of access to indictments, it states and acknowledges
11  that sometimes temporarily -- indictments are sometimes
12  temporarily sealed by the court.  This is an exception rather
13  than the rule and occurs only where there is an overriding
14  concern such as a well-grounded fear of flight by the accused
15  to avoid apprehension, in other words, when the government
16  meets its burden to demonstrate compelling interest that
17  overcomes the First Amendment right of access.
18         And I think in this case in particular, it may very
19  well have been that prior to public disclosure of the pending
20  criminal case against Mr. Assange, the government may have been
21  able to meet that burden.  We don't have access to the motion
22  to seal.
23         We do have access to portions of the motion to seal,
24  which was what was inadvertently filed.  That indicates that
25  the government's justification in paragraph 5 of that motion to

1  seal, the government's justification for seeking wholesale
2  sealing of the Assange prosecution was concern about
3  Mr. Assange, if he learned that he had been charged, would seek
4  to evade custody, would seek to evade capture.
5         That justification simply cannot exist anymore.  At a
6  minimum, Mr. Assange knows that he's been criminally charged,
7  and so I think at this point, at this stage, certainly the
8  government's position that it cannot acknowledge or that
9  there's a compelling interest precluding it from acknowledging
10 the existence of this criminal case, I think, has evaporated to
11 the extent that it existed before.
12         THE COURT:  All right.  Mr. Kromberg, do you want to
13 respond to that?
14         MR. KROMBERG:  I would note that in the, the Second
15 Circuit case called *Southland*, which is quoted in our brief, in
16 that case, the Second Circuit said even though the defendant
17 likely has a -- obviously, the defendant knows he's under
18 investigation, that was the quote, obviously, he knows he's
19 under investigation, but that sealing was still appropriate in
20 that case.
21         If there was sealing in this case -- if there was a
22 case and there was sealing, then that showing was made to the
23 magistrate judge, and this Court at this point in this setting
24 doesn't know what, if anything, was said to the magistrate
25 judge and doesn't know what, if anything, was -- needs to be

14

1 said in response to any change in circumstances, if
2 circumstances have changed.
3     One thing I would point out is that when the
4 Reporters Committee says that we inadvertently filed something,
5 that's true, we inadvertently filed something, but we
6 inadvertently filed something on the *Kokayi* case. To assume
7 that that was a filing for a different case is a leap. It's
8 speculation.
9     We said we made a mistake. We made a mistake. I
10 make lots of them, and we made a mistake, but you should not be
11 able to conclude from that mistake, oh, this was something that
12 was filed in some other case. The only thing you can conclude
13 from our mistake is that we made a mistake, and anything else
14 is speculation.
15     One more moment, Judge. I think Your Honor hit the
16 nail on the head when you said are there any cases that allowed
17 or authorized the disclosure of -- or the disclosure of whether
18 someone had been charged or not pre-arrest? We're not aware of
19 any, and we searched, and I don't think the Reporters were able
20 to find any, either.
21     So if -- I think the first -- the court that orders
22 the government to disclose whether somebody has been charged or
23 not will be the first to do so, pre-arrest.
24     THE COURT: Pre-arrest.
25     MR. KROMBERG: Thank you, Your Honor.

15

1        THE COURT: Yeah, all right. Well, it's obviously a
2   very interesting issue. We're going to take it under
3   advisement. I will indicate, however, that I think that the,
4   that the issue is one where there is no direct authority
5   because I think the government is correct -- and I'll give you
6   one last chance if you know of any case where the court found
7   that the government has an affirmative obligation to admit that
8   somebody has been formally charged before that person is
9   arrested and that somehow the First Amendment compels that kind
10  of openness from the government. I'm not aware of any cases
11  that say that.
12       MS. TOWNSEND: I'm not aware of -- certainly, Your
13  Honor, we will, we will look, and I request that if we have the
14  opportunity to submit that --
15       THE COURT: You'd like some time for supplemental
16  briefing?
17       MS. TOWNSEND: I would appreciate that, Your Honor.
18       THE COURT: All right.
19       MS. TOWNSEND: I think certainly the cases that have
20  been cited by the government, many of the cases relied upon by
21  the government relate to, for example, section 2703(d),
22  applications in order for search warrants, things that happen
23  not merely before a filing of a charging document, which is
24  what we have in this case -- or happened before filing of a
25  charging document, which is what we have in this case, not just

16

1  pre-arrest, and even then, Fourth Circuit case law is quite
2  clear, *Baltimore Sun v. Goetz*, that there is a common law, at a
3  minimum a common law right of access to this material.
4          And I would just point with respect to the issue of
5  grand jury indictments, that Federal Rule of Criminal Procedure
6  6, which governs grand jury procedure generally --
7          THE COURT:  Can you be at the lectern?  We should
8  have you right by the mic.
9          MS. TOWNSEND:  I apologize, Your Honor.  Federal Rule
10 of Criminal Procedure 6, which governs grand jury secrecy, in
11 fact, contemplates that indictments shall be returned in open
12 court.  We've cited, granted, an old case from the Fourth
13 Circuit, a 1909 case, in our papers that indicates that
14 although there's been a long history of grand jury indictments
15 being returned, quote, publicly in open court --
16         THE COURT:  But, you know, the reality of it is that
17 most grand jury indictments are not what we call grand jury
18 originals, all right?  So that actually there's been process
19 before the indictment.  There was an arrest warrant obtained on
20 the basis of a complaint for which a magistrate judge usually,
21 at least in this court, has found probable cause, so there's
22 probable cause to believe someone has committed a federal crime
23 and they're arrested, all right?  And then an indictment is
24 supposed to follow relatively shortly thereafter.
25         At that point, it's already public knowledge that the

1   person has been charged, they've usually been before the court,
2   they may be on bond at this point.  So the reality of it is
3   that I would suspect that the majority of the indictments that
4   are handed down in this court are handed down in open court
5   because the person has already been previously charged.
6              But with grand jury originals, I would also suspect
7   that other than perhaps for white collar cases, the majority of
8   them are filed under seal because the person has not yet been
9   arrested, and until the person is arrested, the government, in
10  my view, does have a compelling interest in keeping the matter
11  of the actual fact of being charged under seal to ensure, as I
12  said earlier, that the person is, in fact, arrested and
13  minimizes the genuine safety concerns that the arresting
14  officers face.  If somebody knows, you know, officers are
15  coming for them, there's an increased chance that there may be
16  a problem in making the arrest.  So there are sound reasons why
17  many indictments are not returned in open court and that are
18  kept under seal until the arrest is made.
19             There's also plenty of cases where an indictment may
20  charge several people, and the first two or three that are
21  arrested, the indictment is only unsealed as to that attorney
22  and that defendant, but the indictment remains under seal
23  because there are still others who have to be arrested.  That
24  is a well-recognized and legitimate basis for the government
25  keeping indictments under seal until the arrests have been

18

1 achieved.

2 And there are even some cases where all the
3 defendants have been arrested and even adjudicated but the
4 indictment is still under seal because there's a second round
5 that's going to be coming. Those are all legitimate government
6 reasons for keeping indictments and other court documents under
7 seal, and so that has to be taken into consideration.

8 So in any case, I will -- do you think a week is
9 enough time for any supplemental briefing on this issue?

10 MS. TOWNSEND: I think less than a week, Your Honor.

11 THE COURT: All right. And then I'll give the
12 government a week to respond to that.

13 MR. KROMBERG: Thank you, Your Honor.

14 MS. TOWNSEND: Thank you, Your Honor.

15 THE COURT: All right. Thank you very much. We'll
16 recess court for the day.

17                    (Which were all the proceedings
18                     had at this time.)

19

20            CERTIFICATE OF THE REPORTER

21   I certify that the foregoing is a correct transcript of
22 the record of proceedings in the above-entitled matter.

23

24

25                                    /s/
                                Anneliese J. Thomson