UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

IN RE THE APPLICATION OF
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS TO UNSEAL
CRIMINAL PROSECUTION OF JULIAN
ASSANGE

Misc. Action No. 1:18-mc-37

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THE APPLICATION OF
THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS
TO UNSEAL CRIMINAL PROSECUTION OF JULIAN ASSANGE

Caitlin Vogus
VA Bar No. 81054
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
cvogus@rcfp.org
*Counsel of Record for Applicant the Reporters
Committee for Freedom of the Press*

Katie Townsend*
Gabriel Rottman*
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
*Admitted Pro Hac Vice*

The Reporters Committee for Freedom of the Press ("Reporters Committee") submits this supplemental memorandum in support of its application for access to sealed court records—including the docket, motion to seal, and any criminal complaint, indictment, or other charging document—from the United States government's pending criminal prosecution of WikiLeaks founder Julian Assange ("Assange") (hereinafter, the "Assange Prosecution").

## ARGUMENT

**I.**      **The Government cannot overcome the public's First Amendment and common law rights of access to court records from the Assange Prosecution by asserting a generalized interest in "pre-arrest" secrecy.**

Whether the common law and First Amendment rights of access apply to a particular judicial record turns on the type of record at issue.  *See Co. Doe v. Public Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014) ("*Public Citizen*") (stating that the "common-law presumptive right of access extends to all judicial documents and records" and "the First Amendment secures a right of access 'only to particular judicial records and documents'"); *see also, e.g., In re State-Record Co., Inc.*, 917 F.2d 124, 129 (4th Cir. 1990) (recognizing constitutional right of access to docket sheets in criminal cases).  As set forth in the Reporters Committee's Application, the type of records at issue here—a court docket sheet, charging document, and other pre-trial criminal case records—are subject to both the First Amendment and common law rights of access.  *See* Appl. of the Reporters Committee to Unseal Criminal Prosecution of Julian Assange (Nov. 16, 2018), ECF No. 1.[1]

---

[1] The Government relies almost exclusively on case law involving judicial records for which the Fourth Circuit has found only a common law right of access.  *See* Gov't Opp'n to Reporters Committee's Appl. (Nov. 26, 2018), ECF No. 7.  In particular, the Government cites cases involving access to search warrant materials.  *See, e.g.*, *Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989).  And it relies heavily on *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 291 (4th Cir. 2013) ("*In re Appelbaum*"), in which the Fourth Circuit held that the common-law presumption of access attaches to orders issued under 18 U.S.C. § 2703(d) of the Stored Communications Act and related documents.  These types of court records are distinguishable from the court records at issue here: a docket sheet and pre-trial filings,

Where the First Amendment right applies, public access may be restricted if closure is "necessitated by a compelling government interest" and the denial of access is "narrowly tailored to serve that interest." *Public Citizen*, 749 F.3d at 266 (quoting *In re Wash. Post Co.,* 807 F.2d 383, 390 (4th Cir. 1986)).  The common-law presumptive right of access can be rebutted by showing that "countervailing interests heavily outweigh the public interests in access."  *Id.*  The burden rests with the party seeking to restrict access to demonstrate a compelling interest that outweighs the strong presumption of public access.  *Id.* at 272; *see also Virginia Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) ("*VDSP*") (explaining that the "party must present specific reasons in support of" sealing).

The Reporters Committee does not dispute that, in some cases, prior to an arrest the Government may have a compelling interest that justifies temporary sealing of court records subject to the First Amendment right of access.  But such interests are not present prior to an arrest in *all* cases, and the Government cannot justify wholesale sealing of the Assange Prosecution, specifically, based on nothing more than the fact that Assange is not in U.S. custody.  As the Third Circuit explained in *United States v. Smith*, though charging documents are "sometimes temporarily sealed by the court" pre-arrest, "this is the exception rather than the rule and occurs *only* when there is an overriding concern such as a well-grounded fear of flight by the accused to avoid apprehension."  776 F.2d 1104, 1112 (3rd Cir. 1985) (emphasis added).

The Reporters Committee has been unable to locate any published decision in which a court has granted (or denied) a motion by a member of the news media or public to unseal a criminal complaint or other charging document prior to arrest.  The Government, however, has not cited, and the Reporters Committee is unaware, of any case holding that the public's

including a case-initiating criminal complaint, to which the First Amendment right of access also applies.  *See In re State-Record Co., Inc.*, 917 F.2d at 128–29.

constitutional and common law rights of access to court records in criminal matters are either

inapplicable or overcome merely because a defendant is not in custody.  Nor could it; whether

sealing of court records is warranted is a case-specific determination.  And as *Smith* suggests,

public access to charging documents—including indictments and criminal complaints—pre-

arrest is far from unusual.  *Id.*

Indeed, the Government has made public—prior to any arrest—the indictment in at least

one matter that is directly related to WikiLeaks and Assange.  As noted in the Reporters

Committee's Application, in July of 2018, the Justice Department announced charges against 12

Russian military intelligence officers in connection with an alleged conspiracy to hack computer

systems at the Democratic National Committee ("DNC") to secure proprietary communications

and data for release during the 2016 U.S. presidential campaign.  Indictment, *United States v.*

*Netyksho*, No. 1:18-cr-00215-ABJ (D.D.C. July 13, 2018) (the "Mueller Indictment").  All 12 of

the Russian military intelligence officers charged in the Mueller Indictment have yet to be

arrested or extradited.  Moreover, the Mueller Indictment—in which WikiLeaks, denominated

"Organization 1," is identified as a conduit through which hacked communications were

published—followed an earlier indictment in February 2018, charging 13 Russians in connection

with Russian interference in the 2016 election.  None had been arrested at the time the charges

were made public; all remain at large.  *See* Matt Apuzzo & Sharon LaFraniere, *13 Russians*

*Indicted as Mueller Reveals Effort to Aid Trump Campaign*, N.Y. Times, Feb. 16, 2018,

https://perma.cc/968Z-KF45 (reporting that "[n]one of the defendants were arrested[,]" and that

if the defendants "travel abroad, they risk capture and extradition").

There are numerous other examples of charging documents being made public prior to

the arrest of a defendant.  *See, e.g.*, Immigr. and Customs Enf't, *Federal Authorities Charge 42*

*Suspects Linked to Drug-Trafficking Network that Brought Large Quantities of Narcotics from*

*Mexico,* https://perma.cc/5BWW-S5D7 (press release announcing arrest of 16 of 43 defendants named in unsealed criminal complaint and stating that "[a]uthorities are continuing to search" for 23 of the 43 defendants who were still at large); Dep't of Justice, *North Korean Regime-Backed Programmer Charged With Conspiracy to Conduct Multiple Cyber Attacks and Intrusions*, https://perma.cc/HC6E-YVZR (press release announcing pre-arrest unsealing of criminal complaint charging an unarrested North Korean citizen in connection with a conspiracy to conduct cyberattacks around the world).  Indeed, just days ago, the Government announced that a "13-count indictment was unsealed" by the U.S. District Court for the Eastern District of New York charging eight defendants "with criminal violations for their involvement in perpetrating widespread digital advertising fraud."  According to the Government, at the time of the unsealing only three of the eight defendants had been arrested; the "remaining defendants are at large." Dep't of Justice, *Two International Cybercriminal Rings Dismantled and Eight Defendants Indicted for Causing Tens of Millions of Dollars in Losses in Digital Advertising Fraud,* Nov. 27, 2018, https://perma.cc/887G-R8RA.  In short, notwithstanding its arguments to this Court, not even the Government is of the view that the mere fact that a defendant has not been arrested is in and of itself a compelling interest that warrants sealing of a criminal complaint.

Fourth Circuit precedent makes clear that the Government must do more than simply assert a generalized interest in keeping court records under seal pre-arrest to justify the ongoing, wholesale sealing of the Assange Prosecution; the Government must demonstrate that specific pre-arrest justifications for sealing are applicable here.  In *VDSP*, for example, the Fourth Circuit agreed with the "general principle that a compelling governmental interest exists in protecting the integrity of an ongoing law enforcement investigation," but explained that "it is not enough simply to assert this general principle without providing specific underlying reasons for the district court to understand *how* the integrity of the investigation reasonably could be affected by

the release of such information."  386 F.3d at 579 (emphasis added).  The Fourth Circuit stated:

"*Whether this general interest is applicable in a given case will depend on the specific facts and circumstances presented in support of the effort to restrict public access*."  *Id.*  (emphasis added); *see also Public Citizen*, 749 F.3d at 270 ("This Court has never permitted wholesale sealing of documents based upon unsubstantiated or speculative claims of harm . . . .").

Whether the Government can demonstrate a compelling need to maintain its criminal complaint against Assange completely under seal pending his arrest—"such as a well-grounded fear of flight by the accused to avoid apprehension," *Smith*, 776 F.2d at 1112—and whether the Government can justify keeping *all* court records from the Assange Prosecution, including the docket sheet, under seal, are case-specific inquiries.  As set forth below, given the unique facts and circumstances here, the Government cannot meet its burden to justify continued, wholesale sealing of the Assange Prosecution.

## II.     No pre-arrest justifications for sealing are present here.

Based on the portions of the Government's motion to seal the Assange Prosecution that were publicly filed in an unrelated matter, the Government has argued that the "complaint, supporting affidavit, and arrest warrant, as well as this motion and proposed order would need to remain sealed until Assange is arrested in connection with the charges in the criminal complaint *and can therefore no longer evade or avoid arrest and extradition in this matter*."  *See* Gov't's Mot. to Seal Criminal Compl. and Supporting Docs. Pursuant to Local Rule 49(b) ¶ 5, *United States v. Seitu Sulayman Kokayi*, No. 1:18-mj-406 (E.D. Va. Aug. 22, 2018), ECF No. 5 (emphasis added).  To the extent this argument was ever sufficient to justify sealing all court records from the Assange Prosecution, it is no longer tenable.

As an initial matter, Assange has not stepped foot outside of the Ecuadoran Embassy in London since arriving there in 2012, and he has confined himself in the Embassy precisely to

avoid certain arrest.  *See* Raffi Khatchadourian, *Julian Assange, A Man Without A Country*, The New Yorker, Aug. 21, 2017, https://perma.cc/QN35-K3G6.  Assange's location is known to the Government, and unsealing the criminal complaint and other judicial records from the criminal case against him will not place Assange in any better (or worse) position to avoid arrest and/or extradition to the United States.

Moreover, the Government cannot credibly argue that Assange is currently unaware of the pending criminal case against him.  Not only was the existence of that case revealed by the Government through its filing in the unrelated *Kokayi* case, but it was confirmed by government sources in subsequent reporting about that disclosure.  *See, e.g.*, Charlie Savage, et al., *Julian Assange is Secretly Charged in U.S., Prosecutors Mistakenly Reveal*, N.Y. Times, Nov. 16, 2018, https://perma.cc/K32Q-UWJW.

Nor should the Government's disclosure of the Assange Prosecution in the *Kokayi* case be viewed in isolation.  Even before the Mueller Indictment in July 2018 identified WikiLeaks as a conduit through which hacked DNC communications were published, Mueller Indictment, *supra* pp. 3, ¶¶ 7, 12, 47–49, statements by Government officials had left little doubt that Assange and WikiLeaks were the targets of criminal investigations by U.S. authorities.  For example, in January of 2017 the Intelligence Community released its official report on Russian election interference which stated that Wikileaks was used to release "US victim data obtained in cyber operations publicly and in exclusives to media outlets."  Nat'l Intelligence Council, Assessing Russian Activities and Intentions in Recent US Elections 2–3 (2017), https://perma.cc/HA67-L67Z.  In April of 2017, then-CIA director Mike Pompeo, in a speech at the Center for Strategic and International Studies, likened WikiLeaks to "a hostile intelligence service," asserting that it "directed Chelsea Manning in her theft of specific secret information," and stated: "[W]e have to recognize that we can no longer allow Assange and his colleagues the

latitude to use free speech values against us. To give them the space to crush us with misappropriated secrets is a perversion of what our great Constitution stands for.  It ends now." *Director Pompeo Delivers Remarks at CSIS,* Cent. Intelligence Agency, Apr. 13, 2017, https://perma.cc/Y4WU-G5C7.  The following month, then-FBI director James Comey, in testimony to Congress, stated that Wikileaks was an "important focus of our attention."  *Read the Full Testimony of FBI Director James Comey in which He Discusses Clinton Email Investigation,* Wash. Post, May 3, 2017, https://perma.cc/BR5H-5S25.  Comey's statement was followed by Vice President Mike Pence's statement in June of 2018 that he had a "constructive conversation" about Assange with Ecuador's President Lenin Moreno.  Andrew Blake, *Mike Pence Raises Julian Assange Case with Ecuadorean President, White House Confirms,* Wash. Times, June 29, 2018, https://perma.cc/G23C-LDDT.

The Fourth Circuit has made clear that there can be no compelling government interest in keeping sealed "information [that] has already become a matter of public knowledge."  *VDSP*, 386 F.3d at 579.  In *VDSP*, the court rejected a challenge brought by a law enforcement agency to a district court order unsealing certain documents in a civil matter that pertained to what the agency asserted was an ongoing murder investigation.  Though the court acknowledged the "general principle" that "protecting the integrity of an ongoing law enforcement investigation" may justify sealing in appropriate circumstances, it concluded that interest was inapplicable in the case before it because the "bulk of the information" contained in the records at issue related to the identity of the VDSP's main suspect and DNA testing linking him to the murder scene, which was "information [that had] already become a matter of public knowledge because VDSP allowed (or acquiesced in) the public release of other documents in which it is contained."  *Id*. Quoting its prior decision in *In re Charlotte Observer*, 921 F.2d 47, 50 (4th Cir.1990), the court explained: "As we have recognized in a slightly different context, "[o]nce announced to the

world, the information lost its secret characteristic." *VDSP*, 386 F.3d at 579 (brackets in original).

Other courts of appeals have reached the same, commonsensical conclusion. *See, e.g.*, *CBS, Inc. v. United States Dist. Court*, 765 F.2d 823, 825 (9th Cir. 1985) (stating that "information relating to cooperating witnesses and criminal investigations should be kept confidential *in some cases*" but not where "most of the information the government seeks to keep confidential concerns matters that *might easily be surmised from what is already in the public record*") (emphasis added).  In *Washington Post v. Robinson*, for example, the D.C. Circuit rejected the Government's argument that unsealing a plea agreement could "threaten an ongoing criminal investigation, or the safety of the defendant"—a cooperating witness—"and his family." 935 F.2d 282, 291–92 (D.C. Cir. 1991) ("*Robinson*").  Noting that such considerations "may well be sufficient to justify sealing a plea agreement in a different case, such assertions fail here," because the defendant's "cooperation was already within the public knowledge."  *Id*. at 291 (taking "judicial notice of the existence of newspaper articles in the Washington, D.C., area that publicized the ongoing criminal investigation" and the defendant's "involvement and cooperation in that investigation").  Specifically, the D.C. Circuit concluded that "disclosure of the contents of the plea agreement would only have confirmed to the public what was already validated by an official source" and "could hardly have posed any additional threat to the ongoing criminal investigation." *Id*. at 292 (citing *CBS, Inc.*, 765 F.2d at 825–26).[2]

---

[2] The Government erroneously argues that this case law does not apply because it has not attempted to "reseal" the filing it made in the *Kokayi* case that discloses the existence of the criminal complaint against Assange.  Gov't's Opp'n to Reporters Committee's Appl. at 6.  This misstates the issue.  The relevant question is whether the "*information*" contained in the records that the Government seeks to keep sealed is already sufficiently "a matter of public knowledge" to foreclose sealing.  *VDSP*, 386 F.3d at 579 (emphasis added).

Here, the fact that Assange has been charged is public; *at a minimum*, it is "easily surmised from what is already in the public record." *CBS, Inc.*, 765 F.2d at 825.  The Government does not demonstrate a compelling interest that would justify keeping the entirety of the Assange Prosecution sealed by mulishly asserting the fiction that Assange—who has confined himself to the Ecuadoran Embassy in London—might attempt to evade arrest if the nature of the charges pending against him are made public.  Gov't's Opp'n to Reporters Committee's Appl. at 6–7.  Given the specific circumstances here, unsealing court records from the Assange Prosecution, including the "contents" of the criminal complaint against Assange, would not "pose any extra threat" that he will evade or avoid arrest, or implicate any other compelling interest of the Government.  *Robinson*, 935 F.2d at 292.

Finally, the Court need not—and should not—ignore the particularly powerful public interest in access here.  In addition to the ever-present public interest in observing the judicial branch, the public's interest in access to court records and proceedings "is at its apex," in criminal and other matters where the Government is a party.  *Public Citizen*, 749 F.3d at 271 ("[T]he public has a strong interest in monitoring not only functions of the courts but also the positions that its elected officials and government agencies take in litigation.").  Moreover, the public—and the press, in particular—have a strong interest, specifically, in knowing the charges against Assange.  The "historic tradition of public access to the charging document in a criminal case reflects the importance of its role in the criminal trial process and the public's interest in knowing its contents." *Smith*, 776 F.2d at 1112.  And, here, the fact that Assange has been charged with an unspecified crime or crimes has raised questions about the Government's potential willingness to pursue charges that may be based on the publication of information— questions that implicate First Amendment concerns, and can only be answered by unsealing the criminal complaint against Assange.  *See, e.g.*, Margaret Sullivan, *Booting Jim Acosta from the*

*White House Was Bad for Press Rights.  Charging Julian Assange Might Be Worse*, Wash. Post,

Nov. 16, 2018, https://perma.cc/359J-ZJ69 (quoting prominent First Amendment attorney Floyd

Abrams as stating that potential ramifications of the Assange Prosecution for the press "very

much depends on what the charge is").

## **CONCLUSION**

For the reasons set forth herein, the Court should grant the Reporters Committee's

Application for an order unsealing court records from the Assange Prosecution.

Dated:  December 3, 2018

Respectfully submitted,

/s/ *Caitlin Vogus*
Caitlin Vogus
VA Bar No. 81054
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
cvogus@rcfp.org
*Counsel of Record for Applicant the Reporters
Committee for Freedom of the Press*

Katie Townsend*
Gabriel Rottman*
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
*\*Admitted Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd day of December, 2018, the foregoing **SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE APPLICATION OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS TO UNSEAL CRIMINAL PROSECUTION OF JULIAN ASSANGE** was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Gordon D. Kromberg
United States Attorney's Office
2100 Jamieson Ave
Alexandria, VA 22314
gordon.kromberg@usdoj.gov

And I hereby certify that I will mail the document by U.S. Mail to the following non-filing user:

Barry J. Pollack
Robbins Russell
2000 K Street, NW
4th Floor
Washington DC 20006
United States of America
bpollack@robbinsrussell.com
*Attorney for Interested Party Julian Assange*

/s Caitlin Vogus
Caitlin Vogus
VA Bar No. 81054
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
cvogus@rcfp.org
*Counsel of Record for Applicant the*
*Reporters Committee for Freedom of the*
*Press*