IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re APPLICATION OF REPORTERS ) <br> COMMITTEE FOR FREEDOM OF ) <br> THE PRESS TO UNSEAL CRIMINAL ) <br> PROSECUTION OF JULIAN ASSANGE ) | 1:18-mc-37 (LMB/JFA) |

## MEMORANDUM OPINION

Before the Court is an application filed by the Reporters Committee for Freedom of the Press ("applicant" or the "Committee") seeking an order unsealing judicial records related to what the Committee believes is a criminal prosecution of WikiLeaks founder Julian Assange ("Assange"). The Committee's application will be denied without prejudice.

I.

This application stems from a motion filed by the Government in a criminal prosecution of Seitu Sulayman Kokayi, who was charged with coercion and enticement of a minor. The Government moved to seal the criminal complaint and the supporting affidavit in that case, arguing that "[p]remature disclosure . . . would jeopardize the investigation." Government's Motion to Seal Criminal Complaint and Supporting Documents Pursuant to Local Rule 49(B), ¶ 1, United States v. Kokayi, No. 18-mj-406 (E.D. Va. Aug. 22, 2018). Without explanation, the motion twice referred to an individual named "Assange," even though no such individual had been named as a codefendant or mentioned in the Kokayi complaint or supporting affidavit. In the first reference, the motion stated:

> The United States has considered alternatives less drastic than sealing, including, for example, the possibility of redactions, and has determined that none would suffice to protect this investigation. Another procedure short of sealing will not adequately protect the needs of law enforcement at this time because, <u>due to the sophistication of the defendant and the publicity surrounding the case, no other procedure is likely to keep confidential the fact that Assange has been charged.</u>

Id. ¶ 3. In the second, it stated:

> The complaint, supporting affidavit, and arrest warrant, as well as this motion and the proposed order, <u>would need to remain sealed until Assange is arrested in connection with the charges in the criminal complaint and can therefore no longer evade or avoid arrest and extradition</u> in this matter.

Id. ¶ 5 (emphasis added). The Government has characterized its references to "Assange" as "unintentional error." Government's Opp'n to Reporters Committee's Appl. [Dkt. No. 7] ("Gov't's Opp'n") 1.

Although the magistrate judge initially granted the Government's motion to seal the Kokayi complaint, affidavit, arrest warrant, and motion to seal, see Order to Seal, Kokayi, No. 18-mj-406 (E.D. Va. Aug. 24, 2018), those documents (with the exception of the affidavit) were unsealed in early September 2018, after Kokayi had been arrested. See Order, Kokayi, No. 18-mj-406 (E.D. Va. Sept. 4, 2018). Once the motion to seal became public, news outlets and social media users noticed the two references to "Assange" and surmised that the Government had instituted criminal charges against Julian Assange, the well-known founder of WikiLeaks, though there is no public record of such charges having been filed. See Memo. of Points & Authorities in Supp. of the Appl. of the Reporters Committee for Freedom of the Press to Unseal Criminal Prosecution of Julian Assange [Dkt. No. 1-4] ("Comm.'s Memo.") 2-3.

The Committee filed this application based on an asserted interest in accessing what it believes are judicial records related to a prosecution of Assange. Specifically, the application "seeks an order unsealing the court records—including, but not limited to, the Court's docket and any criminal complaint, indictment, or other charging document—from the government's criminal prosecution of Assange." Appl. of the Reporters Committee for Freedom of the Press to Unseal Criminal Prosecution of Julian Assange [Dkt. No. 1] ¶ 12. The Government opposes the Committee's application on the ground that it has neither confirmed nor denied whether charges

2

have been filed against Assange and cannot be required to disclose that information before an arrest is made.

## II.

This case lies at the intersection of two weighty interests. One is the Government's need to be able to investigate criminal activity and successfully bring to justice those charged with criminal conduct. The other is the public's right to access judicial records and proceedings, which is an indispensable feature of the American justice system.

### A.

The public and the press share a qualified right to access civil and criminal proceedings and the judicial records filed therein. Doe v. Pub. Citizen, 749 F.3d 246, 265 (4th Cir. 2014). This right "serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness." Id. at 266 (citation omitted). For criminal cases, public access "plays a particularly significant role in the functioning of the judicial process" and inures to the benefit of "both the defendant and . . . society as a whole." Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 606 (1981). Indeed, presumptive openness "has long been recognized as an indispensable attribute of an Anglo-American trial." Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 569 (1980) (plurality opinion).

The right to access judicial records[1] flows from two sources: the common law and the First Amendment. Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 575 (4th Cir. 2004).

---

[1] For the right of access to attach, "the materials at issue must, at minimum, be 'judicial records'"—those documents that are "judicially authored or created" or "filed with the court" and that "play a role in the adjudicative process" or "adjudicate substantive rights." Benedict v. Hankook Tire Co., 323 F. Supp. 3d 747, 755 (E.D. Va. 2018) (citation omitted).

3

Although they often provide complementary protections, the doctrines are not coextensive. The common law right applies to a broader range of scenarios, but the First Amendment affords a greater degree of substantive protection.

At common law, a presumption of access "extends to all judicial documents and records," Doe, 749 F.3d at 265-66; however, that right "is not absolute," Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978), and may be rebutted upon a showing of "a 'significant countervailing interest' in support of sealing that outweighs the public's interest in openness," In re Application of the United States, 707 F.3d 283, 293 (4th Cir. 2013) (citation omitted).[2] In determining whether judicial records should be kept under seal, courts consider "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." In re Knight Pub. Co., 743 F.2d 231, 235 (4th Cir. 1984).

The First Amendment right of access, conversely, "has been extended only to particular judicial records and documents." Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988). A court faced with a First Amendment right-of-access issue must first "determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake." Doe, 749 F.3d at 266 (citation omitted). In determining whether the First Amendment applies to a type of record or proceeding, courts employ the

---

[2] The Fourth Circuit has on occasion articulated the inquiry as whether "countervailing interests heavily outweigh the public interests in access." See, e.g., Va. Dep't of State Police, 386 F.3d at 575 (emphasis added) (citation omitted). Nonetheless, it has since been made clear that "to overcome the common law presumption of access, the government's interests must merely outweigh the public's interest." In re Application, 707 F.3d at 293 n.12.

4

"experience and logic" test, asking "whether the place and process have historically been open to the press and general public" and "whether public access plays a significant positive role in the functioning of the particular process." Balt. Sun Co. v. Goetz, 886 F.2d 60, 64 (4th Cir. 1989) (citation omitted). Where the First Amendment applies, "access may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'" Doe, 749 F.3d at 266 (citation omitted); see Press-Enter. Co. v. Superior Court, 464 U.S. 501, 510 (1984) ("The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values . . . .").

"[W]hether arising under the First Amendment or the common law," the right of public access to judicial records and proceedings "may be abrogated only in unusual circumstances." Stone, 855 F.2d at 182. The reason for this presumption is simple: "Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like a fiat and requires rigorous justification." Doe, 749 F.3d at 266 (citation omitted).

B.

The parties agree that once an individual has been charged and arrested, both the First Amendment and the common law provide the public with a qualified right to access at least some judicial records in connection with the ongoing prosecution. Charging documents are a quintessential example.[3] Historically, the openness of the charging document was intimately

---

[3] Equally well established is that "in the criminal context, . . . the sealing of docket sheets [may be] overbroad and incompatible with the First Amendment presumptive right of access." Doe, 749 F.3d at 268. This principle is "grounded in the commonsensical observation that most of the information contained on a docket sheet is material that is presumptively open to public inspection," id., and unlikely to be prejudicial, In re State-Record Co., 917 F.2d 124, 129 (4th Cir. 1990) (per curiam). Further, "the ability of the public and press to attend civil and criminal cases would be merely theoretical if the information provided by docket sheets were inaccessible." Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 93-94 (2d Cir. 2004) ("In this respect, docket

5

connected with the notion of the open trial itself; although government investigations and grand jury deliberations were shrouded in secrecy, formal charges were typically made "either by indictment presented or information filed in court." United States v. Smith, 776 F.2d 1104, 1112 (3d Cir. 1985). As the Third Circuit put it, "This historic tradition of public access to the charging document in a criminal case reflects the importance of its role in the criminal trial process and the public's interest in knowing its contents." See id. ("Knowledge of the charge or charges is essential to an understanding of the trial, essential to an evaluation of the performance of counsel and the court, and, most importantly, essential to an appraisal of the fairness of the criminal process to the accused.").[4]

Of course, that a judicial record is subject to the right of access does not mean that the public is entitled to inspect the record at all times and in every case. To the contrary, that the right is presumptive means that it may be overcome, in favor of nondisclosure or sealing, where appropriate. This is usually the case before a charged person has been arrested because of the government's well-established interests in preventing the accused from avoiding arrest, destroying or tampering with evidence, or otherwise interfering with the prosecution; securing privacy rights or confidential sources of information; and protecting the public.

---

sheets provide a kind of index to judicial proceedings and documents, and endow the public and press with the capacity to exercise their rights guaranteed by the First Amendment.").

[4] That charging documents are entitled to the same presumption of openness as criminal trials accords with the principle that the Sixth Amendment right to counsel attaches as of "the time that judicial proceedings have been initiated" against a defendant "by way of formal charge, preliminary hearing, indictment, information, or arraignment." Brewer v. Williams, 430 U.S. 387, 398 (1977) (citation omitted). The filing of a charging document "is sufficiently formal, and the government's commitment to prosecute it sufficiently concrete," that from that point on the defendant ceases to be an undifferentiated member of the polity and instead is "faced with the prosecutorial forces of organized society." Rothgery v. Gillespie County, 554 U.S. 191, 207 (2008) (citation omitted). It is the operation of those prosecutorial forces against the defendant that triggers the public's right to access the charging document.

C.

Although the Government recognizes that First Amendment right-to-access analysis typically depends on what "type of document" is being sought, it asserts that courts must also consider the "stage at which public access is sought," and specifically it argues that there is no First Amendment right to access charging documents "before an arrest." Gov't's Opp'n at 2-3. The Committee responds that where a defendant has been formally charged, whether he has been arrested will affect the Government's ability to satisfy its burden to keep the charging document under seal but does not change whether the First Amendment applies as a threshold matter.

The Committee has the better argument. The Government principally points to the Ninth Circuit's opinion in Times Mirror Co. v. United States, 873 F.2d 1210 (9th Cir. 1989), which held that although the public has a First Amendment right to access a search warrant affidavit if the suspect is charged and ultimately moves to suppress evidence from the search, there is no such right "at [the] stage in the warrant proceedings" when "a pre-indictment investigation is ongoing," id. at 1217-19. To the extent this case law supports a clear dividing line based on the stage of a proceeding, that line falls at the filing of formal charges, not arrest.[5] The Third Circuit

---

[5] For example, the Fourth Circuit has rejected a presumptive First Amendment right of access to Stored Communications Act ("SCA") orders issued under 18 U.S.C. § 2703, holding that because SCA proceedings "are ex parte in nature" and "occur at the investigative, pre-grand jury, pre-indictment phase of what may or may not mature into an indictment," they "are not amenable to the practices and procedures employed in connection with other judicial proceedings." In re Application, 707 F.3d at 292 (citation omitted) (emphasis added). Affidavits filed in connection with search warrant proceedings are also "necessarily ex parte" and thus beyond the scope of the First Amendment right. See Goetz, 886 F.2d at 64-65. In fact, Times Mirror, on which the Government relies, confirms this point. See 873 F.2d at 1217-18 ("While warrant materials may, in due course, be disclosed to a defendant so she can challenge the constitutionality of the search at a suppression hearing to which the public has a First Amendment right of access, it does not follow that the public should necessarily have access to the information . . . when an investigation is ongoing but before indictments have been returned." (emphasis added)).

7

was therefore correct to acknowledge that the presumptive right to charging documents applies—but may be overcome in light of the "well-grounded fear of flight by the accused to avoid apprehension"—before the defendant has been arrested. See Smith, 776 F.2d at 1112.

D.

What makes this case unique is that the Government has not acknowledged whether formal charges have been filed against Assange, and the Committee has not cited any authority supporting the notion that the public has a right to require the Government to confirm or deny that it has charged someone.[6] The dispositive issue in this proceeding is whether, under these circumstances, the Committee's application is ripe for judicial review.

In the Committee's view, it is a fact "that Assange has been criminally charged." Comm.'s Memo. 1. It supports this view by pointing to the two sentences in the Government's motion to seal in Kokayi as well as to other cases involving Assange or WikiLeaks and news stories reporting that the Government has charged Assange. See id. at 2-3.[7] Taken together, the Committee argues that the "case against Assange is already a matter of public knowledge" and that the Government is not entitled "to put the genie back" in the bottle. Id. at 10-11 (quoting Gambale v. Deutsche Bank AG, 377 F.3d 133, 144 (2d Cir. 2004)).

---

[6] To the extent the Committee is seeking to force the Government to disclose whether charges have been filed, the Committee's application must be dismissed because the fact of whether charges have been filed is not a "judicial record" in the first place. See In re Application, 707 F.3d at 290-91 (collecting case law discussing which documents qualify as "judicial records"); see also United States v. Amodeo, 44 F.3d 141, 145-46 (2d Cir. 1995) (concluding that to constitute a judicial record, a document must be "relevant to the performance of the judicial function and useful in the judicial process").

[7] For instance, the Committee highlights the widely publicized indictment of Roger Stone, claiming that the allegations in the indictment suggest that Assange was involved in the release of hacked emails during the run-up to the 2016 presidential election and that those allegations "undercut[] any argument on the part of the government for continued sealing" in this proceeding. See Notice [Dkt. No. 13] 1-2.

In response, the Government admits that it made "an unintentional error" in the Kokayi motion but declines to confirm or deny that any charges have been filed against Assange. It asserts that the Committee's application is based only on guesswork—or, as counsel for the Government put it during oral argument, "The only thing you can conclude from our mistake is that we made a mistake, and anything else is speculation." Tr. of Mot. Hr'g [Dkt. No. 10] 14.

The Committee has not demonstrated with sufficient certainty that Assange has been charged. Unlike in other high-profile cases, the Government has not affirmatively disclosed that charges have been filed.[8] Although the Government acknowledges that it made a mistake in the Kokayi motion, the nature of that mistake is fundamentally unclear, which is why the Committee seeks to bolster its view by pointing to news reports and other civil and criminal cases. The Committee's evidentiary amalgam of an obviously erroneous filing in an unrelated case, public speculation, news stories, and anonymous statements by government officials does not supply a level of certainty comparable to that afforded by official acknowledgement.

Accordingly, the question is how the Court should analyze a request for public access to a charging document where there has not been a sufficiently certain disclosure that charges have been filed. The most appropriate way to approach that question is through the lens of the ripeness doctrine, which "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57 n.18 (1993). In essence, it "concerns the appropriate timing of judicial intervention," In re Naranjo, 768 F.3d 332, 347 (4th Cir. 2014) (citation omitted), and serves "to prevent the courts,

---

[8] Cf., e.g., Press Release, U.S. Dep't of Justice, U.S. Charges Russian GRU Officers with International Hacking and Related Influence and Disinformation Operations (Oct. 4, 2018), https://tinyurl.com/y8jdnj9x (reporting, before any of the defendants had been arrested, that a federal grand jury had indicted several Russian intelligence officers).

through avoidance of premature adjudication, from entangling themselves in abstract disagreements," Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967). In assessing whether a matter is ripe for judicial review, courts must bear in mind that ripeness is "very much a matter of practical common sense." Cont'l Air Lines, Inc. v. Civil Aeronautics Bd., 522 F.2d 107, 124 (D.C. Cir. 1974) (en banc).

"[T]he settled rule that the Court will not 'anticipate a question of constitutional law in advance of the necessity of deciding it,'" Petite v. United States, 361 U.S. 529, 531 (1960) (per curiam) (quoting Liverpool, N.Y. & Phila. S.S. Co. v. Comm'rs of Emigration, 113 U.S. 33, 39 (1885)), requires that the Committee's application be dismissed. Until there is a sufficiently certain disclosure that charges have in fact been filed, the Committee's common law and First Amendment claims are premature. To hold otherwise would mean that any member of the public or press—by demanding access to judicial records based on little more than speculation—could effectively force the Government to admit or deny that charges had been filed. Permitting such fishing expeditions would require courts to sort through endless factual permutations giving rise to varying degrees of uncertainty. Courts cannot perform the delicate balancing required by the First Amendment and common law doctrines under such uncertain circumstances.

III.

For the reasons stated above, the Committee's application will be denied without prejudice by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 30 day of January, 2019.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge