# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

MAR - 6 2018

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) (UNDER SEAL) |
| | ) |
| v. | ) Criminal No. 1:18cr 111 |
| | ) |
| JULIAN PAUL ASSANGE, | ) Count 1: Conspiracy to Commit |
| | ) Computer Intrusion (18 U.S.C. §§ 371, |
| Defendant. | ) 1030(a)(1), 1030(a)(2), |
| | ) 1030(c)(2)(B)(ii)) |

March 2018 Term – at Alexandria, Virginia

INDICTMENT

THE GRAND JURY CHARGES THAT:

GENERAL ALLEGATIONS

At times material to this Indictment:

1. Chelsea Manning, formerly known as Bradley Manning, was an intelligence analyst in the United States Army, who was deployed to Forward Operating Base Hammer in Iraq.

2. Manning held a "Top Secret" security clearance, and signed a classified information nondisclosure agreement, acknowledging that the unauthorized disclosure or retention or negligent handling of classified information could cause irreparable injury to the United States or be used to the advantage of a foreign nation.

3. Executive Order No. 13526 and its predecessor orders define the classification levels assigned to classified information. Under the Executive Order, information may be classified as "Secret" if its unauthorized disclosure reasonably could be expected to cause serious

damage to the national security. Further, under the Executive Order, classified information can generally only be disclosed to those persons who have been granted an appropriate level of United States government security clearance and possess a need to know the classified information in connection to their official duties.

4. Julian Paul Assange was the founder and leader of the WikiLeaks website. The WikiLeaks website publicly solicited submissions of classified, censored, and other restricted information.

5. Assange, who did not possess a security clearance or need to know, was not authorized to receive classified information of the United States.

6. Between in or around January 2010 and May 2010, Manning downloaded four, nearly complete databases from departments and agencies of the United States. These databases contained approximately 90,000 Afghanistan war-related significant activity reports, 400,000 Iraq war-related significant activities reports, 800 Guantanamo Bay detainee assessment briefs, and 250,000 U.S. Department of State cables. Many of these records were classified pursuant to Executive Order No. 13526 or its predecessor orders. Manning provided the records to agents of WikiLeaks so that WikiLeaks could publicly disclose them on its website. WikiLeaks publicly released the vast majority of the classified records on its website in 2010 and 2011.

7. On or about March 8, 2010, Assange agreed to assist Manning in cracking a password stored on United States Department of Defense computers connected to the Secret Internet Protocol Network, a United States government network used for classified documents and communications, as designated according to Executive Order No. 13526 or its predecessor orders.

8. Manning, who had access to the computers in connection with her duties as an intelligence analyst, was also using the computers to download classified records to transmit to

WikiLeaks. Army regulations prohibited Manning from attempting to bypass or circumvent security mechanisms on Government-provided information systems and from sharing personal accounts and authenticators, such as passwords.

9.  The portion of the password Manning gave to Assange to crack was stored as a "hash value" in a computer file that was accessible only by users with administrative-level privileges. Manning did not have administrative-level privileges, and used special software, namely a Linux operating system, to access the computer file and obtain the portion of the password provided to Assange.

10. Cracking the password would have allowed Manning to log onto the computers under a username that did not belong to her. Such a measure would have made it more difficult for investigators to identify Manning as the source of disclosures of classified information.

11. Prior to the formation of the password-cracking agreement, Manning had already provided WikiLeaks with hundreds of thousands of classified records that she downloaded from departments and agencies of the United States, including the Afghanistan war-related significant activity reports and Iraq war-related significant activities reports.

12. At the time he entered into this agreement, Assange knew that Manning was providing WikiLeaks with classified records containing national defense information of the United States. Assange was knowingly receiving such classified records from Manning for the purpose of publicly disclosing them on the WikiLeaks website.

13. For example, on March 7, 2010, Manning and Assange discussed the value of the Guantanamo Bay detainee assessment briefs, and on March 8, 2010, before entering the password cracking-agreement, Manning told Assange that she was "throwing everything [she had] on JTF GTMO at [Assange] now." Manning also said "after this upload, that's all I really have got left."

To which Assange replied, "curious eyes never run dry in my experience." Following this, between March 28, 2010, and April 9, 2010, Manning used a United States Department of Defense computer to download the U.S. Department of State cables that WikiLeaks later released publicly.

## COUNT ONE

14. The general allegations set forth in paragraphs 1 through 13 are re-alleged and incorporated into this Count as though fully set forth herein.

15. Beginning on or about March 2, 2010, and continuing thereafter until on or about March 10, 2010, the exact date being unknown to the Grand Jury, both dates being approximate and inclusive, in an offense begun and committed outside of the jurisdiction of any particular State or district of the United States, the defendant, JULIAN PAUL ASSANGE, who will be first brought to the Eastern District of Virginia, did knowingly and intentionally combine, conspire, confederate and agree with other co-conspirators known and unknown to the Grand Jury to commit an offense against the United States, to wit:

(A) to knowingly access a computer, without authorization and exceeding authorized access, to obtain information that has been determined by the United States Government pursuant to an Executive order and statute to require protection against unauthorized disclosure for reasons of national defense and foreign relations, namely, documents relating to the national defense classified up to the "Secret" level, with reason to believe that such information so obtained could be used to the injury of the United States and the advantage of any foreign nation, and to willfully communicate, deliver, transmit, and cause to be communicated, delivered, or transmitted the same, to any person not entitled to receive it, and willfully retain the same and fail to deliver it to the officer or employee entitled to receive it; and

4

(B)  to intentionally access a computer, without authorization and exceeding authorized access, to obtain information from a department and agency of the United States in furtherance of a criminal act in violation of the laws of the United States, that is, a violation of Title 18, United States Code, Sections 641, 793(c), and 793(e).

(In violation of Title 18, United States Code, Sections 371, 1030(a)(1), 1030(a)(2), 1030(c)(2)(B)(ii).)

## PURPOSE AND OBJECT OF THE CONSPIRACY

16.  The primary purpose of the conspiracy was to facilitate Manning's acquisition and transmission of classified information related to the national defense of the United States so that WikiLeaks could publicly disseminate the information on its website.

## MANNERS AND MEANS OF THE CONSPIRACY

17.  Assange and his co-conspirators used the following ways, manners and means, among others, to carry out this purpose:

18.  It was part of the conspiracy that Assange and Manning used the "Jabber" online chat service to collaborate on the acquisition and dissemination of the classified records, and to enter into the agreement to crack the password stored on United States Department of Defense computers connected to the Secret Internet Protocol Network.

19.  It was part of the conspiracy that Assange and Manning took measures to conceal Manning as the source of the disclosure of classified records to WikiLeaks, including by removing usernames from the disclosed information and deleting chat logs between Assange and Manning.

20.  It was part of the conspiracy that Assange encouraged Manning to provide information and records from departments and agencies of the United States.

21. It was part of the conspiracy that Assange and Manning used a special folder on a cloud drop box of WikiLeaks to transmit classified records containing information related to the national defense of the United States.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

22. In order to further the goals and purposes of the conspiracy, Assange and his co-conspirators committed overt acts, including, but not limited to, the following:

23. On or about March 2, 2010, Manning copied a Linux operating system to a CD, to allow Manning to access a United States Department of Defense computer file that was accessible only to users with administrative-level privileges.

24. On or about March 8, 2010, Manning provided Assange with part of a password stored on United States Department of Defense computers connected to the Secret Internet Protocol Network.

25. On or about March 10, 2010, Assange requested more information from Manning related to the password. Assange indicated that he had been trying to crack the password by stating that he had "no luck so far."

A TRUE BILL

3/6/18
DATE

FOREPERSON

Tracy Doherty-McCormick
Acting United States Attorney

By: /s/ Kellen S. Dwyer
Kellen S. Dwyer

Thomas W. Traxler
Assistant United States Attorneys

6

No. 1:18CR111

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

THE UNITED STATES OF AMERICA

vs.

JULIAN PAUL ASSANGE

INDICTMENT

In violation of Title 18 U.S.C. §§ 371, 1030(a)(1), 1030(a)(2), 1030(c)(2)(B)(ii)   Conspiracy to Commit Computer Intrusion

A true bill.

_____
Foreman

Filed in open court this 6th day of March A.D. 2018

_____
Clerk

Bail, $